**BORDEN INC., Appellant,**

v.

**Jose Homero DE LA ROSA, Appellee.**

**No. 13–90–137–CV.**

Court of Appeals of Texas, Corpus Christi.

Nov. 27, 1991.

Rehearing Overruled Jan. 9, 1992.

---

1. *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

Scott J. Atlas, Douglas E. Hamel, Marie R. Yeates, Eileen O'Neill, Shadow Sloan and Erica L. Krennerich, Elkins & Vinson, Jeffrey C. Londa, Hutcheson & Grundy,

Houston, Christopher A. Knepp, Hughes & Luce, Austin, Joseph G. Galagaza, Neel, Hooper & Kalmans, Houston, Morris Atlas, Atlas & Hall, McAllen, Eva C. Ramos and Linda K. McCloud, Vinson & Elkins, Houston, Christina P. Solomon and Warren W. Harris, Porter & Clements, Christopher Lowman, Hutcheson & Grundy, Houston, and Grace F. Renbarger, Hughes & Luce, Austin, for appellant.

Ruben R. Pena, Robert L. Galligan and Michael E. Hearn, Jones, Galligan, Key & Pena, Weslaco, for appellee.

Before DORSEY, KENNEDY and BENAVIDES, JJ.

## OPINION

DORSEY, Justice.

A former Borden employee, Jose Homero De La Rosa, sued Borden for firing him, contrary to Article 8307c,[1] because he filed a workers' compensation claim. Based on a jury verdict, the trial court awarded $986,000 actual damages and $10,000,000 punitive damages, as well as costs and interest. From that judgment, Borden has perfected this appeal. We find the damages to be excessive and suggest a remittitur in lieu of reversal. Otherwise, we reverse and remand for trial.

De La Rosa began with Borden as a retail home delivery route salesman in 1968 and was promoted to a wholesale route after a year and a half. He worked as a salesman on a wholesale route for over eighteen years, selling, delivering and retrieving unsold products from stores and schools in the Harlingen, Texas area. In July, 1985, while on the job, he received an electrical shock from a Borden's delivery truck, was knocked to the ground, and hurt his shoulder. He reported the injury, saw two physicians, received physical therapy, and took time off periodically when he was unable to work because of pain in his shoulder.

He later filed a workers' compensation claim and was represented by counsel. A pre-hearing conference at the local Industrial Accident Board office was held in November, 1987. Because of continuing claimed incapacity, De La Rosa was to be examined by another physician agreed upon by the workers' compensation carrier and himself.

On April 1, 1988, during the pendency of his claim, his supervisor, James Guffey, ordered him to see a company doctor, Dr. York, in Corpus Christi. Dr. York had neither examined De La Rosa earlier in connection with the claim, nor was he the agreed designated examining physician of the parties. Appellee answered that he needed to consult his attorney before he could agree to be examined by Dr. York. The next day Guffey repeated the order and appellee said he had not reached his attorney. On Monday, when appellee said he would not go to the examination without his attorney's approval, Guffey fired him.

James Guffey had the position of "sales branch manager" for Borden in the Rio Grande Valley, having control of the Harlingen branch where appellee worked. Guffey had 29 employees under his supervision at the time of the incident. He testified that Darrell Bland, the wholesale supervisor for the Corpus Christi area, told him to tell appellee to go see Dr. York to determine if he was able to perform his job, and if appellee refused to go, to fire him and escort him off the premises.

1. Article 8307c, Protection of claimants from discrimination by employers; remedies; jurisdiction, provides:

 Sec. 1. No person may discharge or in any other manner discriminate against any employee because the employee has in good faith filed a claim, hired a lawyer to represent him in a claim, instituted, or caused to be instituted, in good faith, any proceeding under the Texas Worker's Compensation Act, or has testified or is about to testify in any such proceeding.

 Sec. 2. A person who violates any provision of Section 1 of this Act shall be liable for reasonable damages suffered by an employee as a result of the violation, and an employee discharged in violation of the Act shall be entitled to be reinstated to his former position. The burden of proof shall be upon the employee.

 Sec. 3. The district courts of the State of Texas shall have jurisdiction, for cause shown, to restrain violations of this Act. Tex.Rev.Civ.Stat.Ann. art. 8307c (Vernon Supp. 1991).

By points one and two, Borden argues that the trial court incorrectly submitted the art. 8307c cause of action in Question number 1, and that the jury's answers will not support an award under the statute. Its main thrust is that appellee did not obtain a sufficient showing of causation to constitute a finding that Borden violated the statute.

The question as submitted made the following inquiries:

Do you find that at least one factor in the discharge of Mr. De La Rosa was because he in good faith:

a) has filed a claim; b) has hired a lawyer to represent him in a claim; c) has instituted or caused to be instituted a proceeding under the Texas Worker's Compensation Act.

All three inquiries were answered affirmatively.

The charge also included the following instruction:

The Texas Workers' Compensation Act provides that no person may discharge or in any other manner discriminate against an employee because the employee has in good faith filed a claim, hired a lawyer to represent him in a claim, instituted, or caused to be instituted in good faith, any proceeding under the Texas Workers' Compensation Act, or has testified or is about to testify in any such proceeding.

Borden objected at trial that the charge was not in substantially correct form and that it should have asked if *a cause of* the plaintiff's discharge was his filing a claim or hiring a lawyer.

■ Objections to the charge must distinctly point out the objectional matter and the grounds for the objection. Tex. R.Civ.P. 274; *Castleberry v. Branscum,* 721 S.W.2d 270, 276 (Tex.1986). In this case, the most the trial court could glean from Borden's objection was that it erred in using the words "a factor in" the discharge, rather than "a cause of" the discharge.

While the language of the charge deviated from the exact language of the statute and the Pattern Jury Charge, it did not misstate the law or improperly alleviate any burdens on the appellee to prove his case. Borden's objection did not track the language of the statute or inform the court that the question was not in compliance with the statute. Texas cases have recognized that typically many reasons are given for discharging an employee who has filed a claim, and it is not necessary for all reasons but the one prohibited by law to be disproved or disbelieved by the jury. *General Elec. Co. v. Kunze,* 747 S.W.2d 826, 829 (Tex.App.—Waco 1987, writ denied). Moreover, it is not necessary that the filing of a claim be the only or sole cause of the discharge. *Mid-South Bottling Co. v. Cigainero,* 799 S.W.2d 385, 389–90 (Tex. App.—Texarkana 1990, writ denied). In order to prevail, a worker need only show that the claim contributed to the company's decision to terminate. *Cigainero,* 799 S.W.2d at 389–90.

■ When a cause of action is created by statute, the legislative allowance must be strictly followed. The better practice is to submit the jury questions as closely as possible to those used in the statute. *See City of Brownsville v. Pena,* 716 S.W.2d 677, 680 (Tex.App.—Corpus Christi 1986, no writ). Here, the appellee utilized a combination of language from case law as well as the Texas Pattern Jury Charge. Given the instruction and the structure of the charge as a whole, the charge was proper. We overrule both the portion of point one dealing with the causation standard in the charge and point two.

In its first point of error, Borden also complains that Question No. 3 and its accompanying instruction [2] are not sufficient to support the award of exemplary damages. Borden's complaints are two: that

2. Question No. 3: "Did Borden, Inc. act willfully or maliciously in discharging Mr. De La Rosa? "A malicious act is an intentional wrongful act done without just cause or excuse before one believes it to be right or legal or done with conscious disregard for the rights of others. Willfulness and malicious intent may be inferred from the conduct of the wrongdoer. "Answer 'Yes' or 'No'."

Question No. 3 was not conditioned upon an affirmative finding of liability under Question No. 1, and that the definition of malice submitted does not require a mental state more egregious than that required for a violation of the statute and is therefore improper.

■ Borden complains that Question No. 3 was not conditioned on an affirmative answer to Question No. 1. The precise complaint is that without the discharge being connected with the plaintiff's filing of the workers' compensation claim, although done with malice, it does not constitute a violation of the statute. If it is not a violation of the statute, the mental state is immaterial and will not support punitive damages.

The better practice would be to find that a violation of the statute has occurred before determining whether the necessary mental state existed for punitive damages. Failure to do so under the circumstances is not fatal, however. When the jury was asked if Borden acted willfully or maliciously in discharging Mr. De La Rosa, the act of discharging referred back to the answer to Question No. 1 regarding whether the appellee filed a claim. Absent an affirmative finding in Question No. 1, the response to Question No. 3 would not support a recovery.

We hold error, if any, was harmless because the jury answered Question No. 1 affirmatively.

■ Section 2 of Article 8307c provides that an employer who violates a provision of section 1 "shall be liable for reasonable damages" suffered by the employee as a result of the violation. Punitive damages are within the scope of "reasonable damages suffered by an employee" under the act, and are thus recoverable under the correct conditions. *Azar Nut v. Caille,* 734 S.W.2d 667, 668 (Tex.1987).

■ The test for liability for exemplary damages is whether there was a violation of 8307c which was willful and malicious. *See Azar Nut; Houston Northwest Medical Center Survivor, Inc. v. King,* 788 S.W.2d 179, 181 (Tex.App.—Houston [1st Dist.] 1990, no writ). Borden contends that the malice finding in Question No. 3 is inadequate to support an award of punitive damages, given the definition of malice in the instructions. It claims that under the definition and question, a mental state more egregious than that required to constitute the primary art. 8307c violation was not required. At trial, Borden objected only that there was no evidence of willfulness or maliciousness as a matter of law and that as a matter of law appellee cannot or should not recover punitive damages.

Objections to the charge must be specific. Tex.R.Civ.P. 274; *Castleberry,* 721 S.W.2d at 276. The objection here failed to inform the trial court that the definition or question did not require a mental state more egregious than that required for art. 8307c liability. The objection only preserved for review issues regarding whether there was any evidence of willful and malicious conduct and whether punitive damages may be recovered. The Supreme Court in the *Azar* case held that punitive damages are recoverable under the statute.

Part of appellant's first point of error complains of the adequacy of the evidence to support a finding of malice. We will address it when we discuss the points of error concerning the sufficiency of the evidence. We overrule point one.

■ Borden complains by point five that the trial court erred in refusing to include the following requested instructions in the charge:

Neither Article 8307c nor the Texas Worker's Compensation Act restricts an employer's right to require an employee to undergo a medical examination to determine the employee's physical ability to safely perform the duties of his job without harming himself or others.

An employer has the right to issue job requirements that are not designed to cause discharge or discriminate against an employee who has filed a worker's compensation claim.

Borden's tenth point complains of the trial court's refusal to submit questions and instructions regarding whether actions

of Borden and Guffey were privileged or qualifiedly privileged. The proposed instruction was:

> An act is privileged if it is done in the discharge of some public or private duty, legal or moral, in the conduct of the actor's affairs in which the actor's interest is concerned.

■ The trial court is charged with submitting such definitions and instructions as shall be proper to enable the jury to render a verdict. Those instructions and definitions should be submitted only if they are of some aid or assistance to the jury in answering the submitted issues. *Sappington v. Younger Transp., Inc.*, 758 S.W.2d 866, 867–868 (Tex.App.—Corpus Christi 1988, writ denied); Tex.R.Civ.P. 277. Unnecessary instructions should not be given, even if they are correct statements of law. *Accord v. General Motors Corp.*, 669 S.W.2d 111, 116 (Tex.1984); *Hukill v. H.E.B. Food Stores, Inc.*, 756 S.W.2d 840, 844 (Tex.App.—Corpus Christi 1988, no writ); *see Lemos v. Montez*, 680 S.W.2d 798, 801 (Tex.1984). The trial court has considerable discretion in determining what instructions to submit. *Boaz v. White's Auto Stores*, 141 Tex. 366, 172 S.W.2d 481, 484 (1943).

The jury had to decide whether the compensation claim was a reason for the firing. Listing other possible considerations would not necessarily aid the jury in this determination. We find no abuse of discretion, and overrule points of error five and ten.

## SUFFICIENCY OF THE EVIDENCE

■ By points three, four, eight, nine, eleven, and thirteen, Borden complains that the evidence is legally and factually insufficient to support various jury findings. In reviewing the sufficiency of the evidence, we view the evidence in a light most favorable to the verdict. In determining the factual sufficiency we weigh all evidence, while in determining if any evidence exists to support the verdict, we view only that evidence that is consistent with the verdict and disregard all that is contrary.

■ De La Rosa was discharged by Jim Guffey for refusing to be examined by a doctor chosen unilaterally by Borden. Guffey acted on explicit instruction of his supervisors at Borden, who told him to fire De La Rosa if he refused to see the doctor. At the time it made the ultimatum, Borden's executives knew that De La Rosa's workers' compensation claim was pending. Kelly Longbotham, Guffey's direct supervisor, had been present at a prehearing conference of the Industrial Accident Board concerning De La Rosa's claim. All parties agreed at that conference that De La Rosa would be examined by a mutually acceptable physician.

The Borden executives knew that De La Rosa was represented by counsel. His refusal to be examined by the physician was obviously anticipated by Borden because of their directive to Guffey to fire him if he refused to be examined. Borden could have foreseen that De La Rosa's attorney would have resisted an examination by a doctor chosen by them because the primary issue in appellee's claim was the extent of his disability.

■ Borden argues that De La Rosa was insubordinate and a poor worker. They maintain that Dr. York's examination was actually to protect appellee and the public. They aver that they had an almost absolute right to fire De La Rosa because he was employed by them at will.[3] The jury was presented with evidence raising all of these defensive issues, but wholly rejected Borden's theory of the case.

Although there was no direct testimony by a Borden supervisor or employee that De La Rosa was fired because he filed a compensation claim or hired a lawyer to aid in one, there was evidence presented which would have allowed a reasonable jury to so conclude.

The jury could have found that Borden improperly attempted to impede appellee's

---

3. We note that the right of an employer to fire an at-will employee is nearly absolute. However, there are exceptions to the doctrine, one of which is a violation of art. 8307c at issue here. *See Sabine Pilot Serv., Inc. v. Hauck*, 687 S.W.2d 733 (Tex.1985).

relationship with his attorney, based on Guffey's pressuring him not to consult the attorney. In *A.J. Foyt Chevrolet, Inc. v. Jacobs*, 578 S.W.2d 445, 447 (Tex.Civ. App.—Houston [1st Dist.] 1979, no writ), discharging an employee for retaining an attorney in a compensation claim violated art. 8307c. Alternatively, the jury could have found that Borden engaged in a scheme to force appellee to either go to the company doctor for the compensation claim, which Borden had no right to demand, or get fired. We find the evidence legally and factually sufficient to support the jury's answers to Questions 1 and 3. We overrule points one, three, and four.

## ADMISSION AND EXCLUSION OF EVIDENCE

By point six, Borden challenges three adverse rulings on evidentiary matters. Point fifteen challenges the admission of Borden financial data relevant to the issue of punitive damages.

 The admission or exclusion of evidence is reversible error only if it was error which was harmful and calculated to cause and probably did cause the rendition of an improper judgment. *Security State Bank v. Valley Wide Elec. Supply Co.*, 752 S.W.2d 661, 666 (Tex.App.—Corpus Christi 1988, writ denied); *Howard v. Faberge, Inc.*, 679 S.W.2d 644, 647 (Tex. App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.). Error in the admission of evidence is harmless if it is merely cumulative of evidence to which no objection was made. *Gee v. Liberty Mutual Fire Ins. Co.*, 765 S.W.2d 394, 397 (Tex.1989). A trial court may exclude even relevant evidence if its prejudicial effect outweighs its probative value. Tex.R.Civ.Evid. 403. Error in admission or exclusion of evidence may also be reversible if the error was such that it probably prevented the appellant from making a proper presentation of the case to the appellate court. *See* Tex.R.App.P. 81(b).

 We will review the evidentiary complaints following these standards. First, Borden complains about the exclusion of De La Rosa's personnel records maintained by Borden. De La Rosa objected to the records as hearsay. Borden countered that the records were admissible as business records, to establish Borden's state of mind, and for impeachment purposes. Because the records showed customer complaints, violations of company policies, and acts of insubordination, they were admissible to show Borden's state of mind, i.e., that Borden knew De La Rosa was not a very good employee. It was therefore error to exclude the personnel records.

 Nonetheless, it is difficult to see how the absence of these records affected the verdict. Borden did not contend that it fired De La Rosa because he was a bad employee generally, but maintained he was fired for one act of insubordination: the refusal to be examined by the company doctor. Further, testimony showed that customers had complained about De La Rosa, that he had violated company policy, and that he was insubordinate. The personnel records tended to be merely cumulative of that testimony. We hold the error was not harmful.

 Next, Borden complains that the trial court erred in admitting the testimony of attorney Richard Flores, who testified that in his opinion, De La Rosa had been fired because he had filed the compensation claim.

 If scientific, technical or specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify to that knowledge in the form of an opinion or otherwise. Tex.R.Civ.Evid. 702.

 We believe that the issue whether appellee was fired because he filed a compensation claim was not the type of question for which expert testimony was required. No specialized or technical knowledge was necessary to assist the jury in answering a simple factual inquiry. The admission of the testimony was error. However, we find that Borden's objection

that such testimony was "prejudicial" was simply too general to preserve error. Regardless, the record is replete with additional evidence from which the jury could have concluded that appellee was fired because he filed the claim.

■ Borden also challenged the testimony of Dr. Everett Dillman, an economist, who testified about the relative impact various punitive damage amounts might have on Borden based on financial information about the company. Dillman's testimony came within the purview of Rule 702 and was properly admitted. *Celotex Corp. v. Tate*, 797 S.W.2d 197, 202 (Tex.App.—Corpus Christi 1990, no writ).

■ Finally, Borden complains about the admission of Keith King's deposition. King, in-house counsel to Borden, testified at the deposition that he had discussed appellee with Sallinger, Longbotham and Guffey. King asserted attorney-client privilege when asked to relate the substance of those discussions. The deposition was read to the jury in violation of Tex.R.Civ.Evid. 513(b) and was error.

However, Sallinger had already testified that he had consulted with King. Even if King's testimony had been excluded, the unchallenged testimony was sufficient to justify an inference of malice. Borden has not shown that the error was harmful and calculated to cause and probably did cause the rendition of an improper judgment. Points of error six and fifteen are overruled.

### DAMAGES

■ Borden complains that the evidence does not support an award for mental anguish. Damages for mental anguish may be recovered for violations of art. 8307c. *Paragon Hotel Corp. v. Ramirez*, 783 S.W.2d 654, 660 (Tex.App.—El Paso 1989, writ denied). Damages for mental anguish are uniquely within the province of the jury, who views the testimony first hand.

The evidence at trial showed that appellee was having financial problems as a result of the firing, including a threatened foreclosure and a reduced lifestyle. Dr. Michael Anderson, a therapist, testified that appellee suffered from depression and had nightmares about safety, security, and finances. Appellee's wife testified that her husband was tense and unable to talk to her about his problems. This is sufficient to show past mental anguish.

■ Borden also complains that future wages are not a proper element of damages absent a request for reinstatement. The evidence showed that appellee requested reinstatement which was denied. Future wages are a proper element of damages under art. 8307c. *Carnation Co. v. Borner*, 610 S.W.2d 450, 454 (Tex.1980). Reinstatement is not required as a prerequisite to being awarded future lost wages under the statute. *General Elec. Co. v. Kunze*, 747 S.W.2d at 831. The award was proper.

### AMOUNTS OF DAMAGES

Borden complains by its eleventh point of the sufficiency of the evidence to support the actual damages found by the jury. Point twelve claims that the damages are excessive. The jury found $36,000 in damages for past lost wages, $800,000 in future lost wages, and $150,000 in past mental anguish.

■ Factual sufficiency is the sole remittitur standard for actual damages. *Pope v. Moore*, 711 S.W.2d 622, 623 (Tex. 1986). We examine all of the evidence in the record to determine if sufficient evidence exists to support the award. We will remit only if some portion is factually unsupported or so against the great weight and preponderance of the evidence that it is manifestly unjust.

■ Regarding past lost wages, Dr. Dillman testified that appellee would have earned $38,093 more than he did between his firing and his trial had he not been terminated. Dillman also stated that over De La Rosa's life time his future earnings, if he works for Borden until he reaches age 70, will be $367,288. Although Dillman presented the only economic testimony offered at trial, the jury awarded $800,000.

Viewing the evidence in the light most favorable to the verdict, the award of future lost wages exceeds the evidence by $432,712.

We find that the evidence supports the amount of past lost wages found by the jury, and the award for past mental anguish; however, the evidence supports the future lost wages finding only to the extent of $367,288. We sustain point eleven and suggest a remittitur in the amount of $432,712.00. We overrule point twelve.

Point thirteen attacks the legal and factual sufficiency of the evidence to support the exemplary damage finding and point fourteen complains that the $10 million dollar award is excessive.

The reasons for assessing exemplary damages include punishing the wrongdoer, setting an example for others, and reimbursing for losses too remote to be considered elements of strict compensation. *Hofer v. Lavender*, 679 S.W.2d 470, 474 (Tex.1984). Whether a jury award of damages is excessive is a question of fact. *Tatum v. Preston Carter Co.*, 702 S.W.2d 186, 188 (Tex.1986). Exemplary damages should be reasonably proportioned to actual damages. *Tatum*, 702 S.W.2d at 183.

We review these awards based upon the factors articulated in *Alamo Nat'l Bank v. Kraus*, 616 S.W.2d 908, 910 (Tex.1981). We look first to the nature of the wrong. The case at bar involved primarily economic harm done to appellee. The jury found mental anguish damages of $150,000 but found no future damages for mental anguish. It was therefore the jury's determination that appellee would suffer no future mental anguish and that physical injury and suffering did not exist. Appellee was out of work for eight months, but he is now employed. The single tortuous act which Borden committed was firing De La Rosa in contravention of the statute. It was not a systematic course of conduct carried out over a lengthy period of time. This is not a case in which a grossly negligent defendant flagrantly violated safety rules or used inferior materials in designing a product in order to enhance its financial status.

Second, we examine the character of the conduct involved and the wrongdoer's culpability. Appellee was fired and Borden was held liable for that. However, appellee was not fired shortly after he filed his compensation claim. In fact, the injury of which appellee complains happened in 1985, while the firing did not occur until 1988. Borden's conduct differs from that in the *Azar* case, in which a clerk refused to report the injury and accused the worker of being dishonest. While the evidence shows that Borden's behavior was willful and malicious, it must be considered in relation to the results of that conduct: a temporary time of hardship for the De La Rosas which is alleviated largely through the actual damages recovered by them. We next look to the situations and sensibilities of the parties. At the time of discharge, appellee was not incapacitated, he was working for Borden. The evidence showed that appellee was not a good worker, that there were customer complaints about him, and that he was not a model employee. On the other hand, Borden, a large and powerful company, deprived him of his livelihood in contravention of the law.

The fifth factor discussed in the *Kraus* case is the extent to which the conduct offends a public sense of justice. While the conduct of Borden in this case offends a public sense of justice, we must review whether $10 million is a fair amount to punish Borden and to deter the company from this kind of conduct in the future.

We find Borden's treatment of Homer De La Rosa does not warrant exemplary damages in the amount awarded. The conduct of Borden was not so outrageous as to grossly offend one's sense of justice and demand such a penalty. The record shows that Borden had reason to fire De La Rosa due to his conduct at work. Further, Borden did not engage in a lengthy course of conduct which flagrantly disregarded De La Rosa's rights. The amount of exemplary damages awarded shows a disregard for the evidence presented. It indicates that the jury was influenced more by the wealth of Borden than the evidence of their improper conduct. We find that the evidence

in the record supports exemplary damages in the amount of $1,500,000. We suggest a remittitur in the amount of $8,500,000. Points thirteen and fourteen are sustained.

By point sixteen, Borden complains that the exemplary damage award violates the excessive fines provisions of the U.S. and Texas Constitutions. Absent state action, however, the excessive fines provisions do not apply to awards of exemplary damages between private litigants. *See Celotex Corp. v. Tate,* 797 S.W.2d at 208. Borden also argues that the award was based on its wealth rather than on its conduct. The status of the tortfeasor is always a consideration in the assessment of punitive damages. *Kraus,* 616 S.W.2d at 910. Borden's other arguments concerning violations of due process have been considered and rejected by the court. *Celotex,* 797 S.W.2d at 209.

Borden also avers that the exemplary damage award violates its constitutional right to the open courts provision of the constitution. Tex. Const. art. I, § 13. A litigant complaining of a violation must generally show that he has a common law right of action that is being restricted, and that the restriction is unreasonable or arbitrary when balanced against the legislative purpose of the statute. *Rose v. Doctors Hosp.,* 801 S.W.2d 841, 843 (Tex.1990). Nothing prevented Borden from presenting its case. That a litigant does not like the result of a court proceeding does not deprive it of a day in court. By enacting a scheme entitling a successful party to punitive damages, the legislature clearly intended to chill violations of the law.

By point seven, Borden contends that De La Rosa's closing argument was improper and prejudicial. Specifically, appellant complains of counsel's reference to the testimony of King and Flores. However, we find no specific mention of Flores in the argument.

Borden did not object to final argument that King advised Sallinger on how to terminate appellee. When appellee's counsel later argued that the decision was made in part by individuals in Corpus Christi and by a man named Keith King, Borden objected that no evidence showed that King made that decision. The court instructed the jury to disregard anything the attorney said that was not in harmony with it. We find no reversible error and overrule point seven.

Borden also asks for a new trial based on the cumulative errors at trial. We find that the case on the whole was ably presented. Any errors committed did not constitute reversible error in the aggregate. *See Birchfield v. Texarkana Memorial Hosp.,* 747 S.W.2d 361, 366 (Tex.1987). We overrule point seventeen.

By crosspoint appellee argues that the trial court erred in failing to award both the $10,000,000 punitive damages for the art. 8307c violation and the $10,000,000 punitive damage award for the negligent training cause of action. Although appellee obtained damage findings under alternative theories of recovery, they were based upon the same act, and the jury made identical assessments of damages under each theory. *See Birchfield,* 747 S.W.2d at 367; *K-Mart Corp. v. Martinez,* 761 S.W.2d 522, 524 (Tex.App.—Corpus Christi 1988, writ denied). We decline to award a double recovery for punitive damages. We overrule the crosspoint.

Because we have overruled Borden's challenges to the findings on wrongful termination which will support the judgment, our rulings on points on alternative theories would not be dispositive. We therefore decline to discuss points eight, nine, and parts of eleven, twelve, and thirteen.

Having found the damages excessive, we REVERSE the judgment and REMAND for trial. If, however, appellee files a remittitur of $8,500,000.00 in punitive damages and $432,712 of actual damages within 15 days of the entry of this opinion, the judgment will be affirmed.

BENAVIDES, J., not participating.