**TRI–COUNTY ELECTRIC COOPERATIVE, INC.,**
Appellant,

v.

**Richard TIDWELL, Appellee.**

No. 2–92–241–CV.

Court of Appeals of Texas, Fort Worth.

July 27, 1993.

Rehearing Overruled Sept. 15, 1993.

Hooper & Evans, Jeffrey H. Kobs, Fort Worth, for appellant.

Andrew Ottaway, Granbury, for appellee.

Before HILL, C.J., and FARRIS and DAY, JJ.

## OPINION

HILL, Chief Justice.

Tri–County Electric Cooperative, Inc., appeals from a judgment rendered following a jury trial in a case brought by Richard Tidwell, the appellee, who is a former meter reader for Tri–County. Tidwell brought this suit claiming that he was discharged by Tri–County in retaliation for hiring an attorney to prosecute his worker's compensation claim against Tri–County. Tri–County contends in four points of error that there is no evidence or, alternatively, insufficient evidence, that Tidwell was discharged for instituting proceedings to collect worker's compensation benefits; and that there is no evidence or, alternatively, insufficient evidence, that Tidwell was damaged as a result of the discharge.

We reverse and render judgment that Tidwell take nothing against Tri–County because there is no evidence that Tidwell could have returned to work even had he not been terminated, there was no evidence of any benefits, as opposed to wages, that Tidwell might have lost as a result of his termination, and therefore no evidence to support the jury's verdict as to damages.

Tri–County contends in points of error numbers one and two that there is no evidence or, alternatively, insufficient evidence that Tidwell was fired in retaliation

for his efforts to collect on his worker's compensation claim.

■ We will first consider Tri–County's claim that there is no evidence to support the jury's finding that it discharged Tidwell for instituting proceedings to collect worker's compensation benefits. In determining the merits of Tri–County's claim, we will consider only the evidence and inferences that tend to support the finding of the jury and disregard all evidence and inferences to the contrary. *See Sherman v. First Nat'l Bank*, 760 S.W.2d 240, 242 (Tex.1988) (per curiam).

Tidwell injured himself originally in July 1987 when he had to jump a fence to read a meter. He filed a worker's compensation claim. Subsequently, Tidwell had surgery performed on his back. Following the surgery, Tidwell presented a medical release indicating that he could perform his normal duties. He returned to work in the spring of 1988.

When the back problem appeared to be more serious than originally thought, Tidwell left work again to have additional surgery. When Tidwell had the second operation he hired an attorney to assist him with his worker's compensation claim.

Tidwell testified that his job as a meter reader did not require him to lift more than fifty or sixty pounds. He said that after the second operation he got a report from his doctor that said he could walk two miles a day, with no bending, stooping, or lifting, and with no lifting in excess of fifty pounds. He said that when he submitted the release form to Tri–County, he was told that there was no opening and that his job had been filled. Mr. Allen with Tri–County told him that he would call him if there were an opening since all he was capable of doing was reading meters. Tidwell testified that there had been an opening since his termination, but that he was not contacted about it. Tidwell further testified that at the time he was fired he was back at work ready and fully capable of performing his job.

Tidwell also testified that he and a friend, Doug Causey, were both terminated on the same day, June 12, 1989. He said that he did not know of anyone else who had a claim, and that he did not know of anyone else who had been terminated.

Tidwell said that several years prior to his injury, in 1982 or 1983, he had overheard his supervisor say, with respect to Doug Causey's hiring an attorney, that he hoped that he did not, because if he did he probably would not have a job long.

■ We hold that there is legally sufficient evidence to support the jury's finding. Tri–County relies on the case of *DeFord Lbr. Co. v. Roys*, 615 S.W.2d 235 (Tex.Civ. App.—Dallas 1981, no writ). We find that case to be distinguishable because in that case there was no evidence that the only employees being terminated at the company were those with worker's compensation claims.

■ In considering Tri–County's assertion that Tidwell's evidence is factually insufficient to support the jury's verdict, we will consider all of the evidence to determine whether the evidence supporting the finding is so weak or the evidence to the contrary is so overwhelming that the finding should be set aside and a new trial ordered. *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex.1965). Should we agree that the evidence is factually insufficient, we should state in what regard the evidence supporting the finding is weak or in what regard the contrary evidence is so overwhelming that the finding should be set aside. *See Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex.1986) (opinion on reh'g).

Tidwell testified that Evelyn Tinney, who was in Tri–County's insurance office, provided him with the forms to file his worker's compensation forms and filed them for him. He said that she was particularly helpful to him during the period of time that he was off work.

Tidwell acknowledged that Tri–County requires a full medical release when one is off before that employee can go back to work, and that that had always been its policy.

Tidwell also stated that the supervisor who had made the remark about Causey

possibly being terminated if he hired an attorney did not have anything to do with the management of Tri–County.

Neil Allen testified that when Tidwell returned the first time with a full release he was put back to work. He related that subsequently, when Tidwell could not work, Tri–County hired a replacement worker but did not remove Tidwell as an employee. He acknowledged that when Tidwell sought to return to work with a limited release that he told him that he did not have anything that would fit the limitations. He also said that he told him that if anything came up he would talk to him about it and take his application.

Allen further stated that he had never had an employee out on a compensation claim who had come back to work with a limited physical impairment on his or her release. He said that the termination of Tidwell and Causey on the same day was a coincidence. He said that he never implied to Tidwell that he should not, could not, or ought not file a worker's compensation claim, nor had he ever done so to any other employee of Tri–County.

Allen and the line superintendent for Tri–County both testified that they had no knowledge of the status of Tidwell's worker's compensation claim.

Evidence that Tidwell and Causey, the only Tri–County employees with worker's compensation claims, were terminated on the same day, while none of those without such claims were terminated, supports Tidwell's claim that the termination was in retaliation for his making such a claim.

In contrast, other evidence shows that Tidwell was kept on the payroll for approximately two years before he was terminated, and then only when he was not able to obtain a full medical release. There is no evidence that anyone connected with his termination had any knowledge concerning the status of his claim, nor that anyone connected with the management of Tri–County had ever said or done anything that was critical of his making such a claim. Rather, the company insurance office had assisted him in the filing of his claim.

■ Considering all of the evidence, we hold that the evidence supporting the jury's finding is so weak and the evidence to the contrary is so overwhelming that the finding should be set aside. We find that the undisputed evidence as outlined above establishes that, contrary to the jury finding, Tidwell's termination was due to his inability to obtain a full medical release and return to work, not for filing a worker's compensation claim. Any possible inference of retaliatory termination arising from the firing of Tidwell and Causey on the same day, and the absence of termination of those without such claims, is belied by the length of time Tri–County kept Tidwell on the payroll and by its demonstrated willingness to allow him to return to work long after the filing of such a claim, when he could do so with a full release.

Tidwell relies on several cases, including *Borden, Inc. v. De La Rosa*, 825 S.W.2d 710, 716 (Tex.App.—Corpus Christi 1991, writ granted), *vacated and remanded*, 831 S.W.2d 304 (Tex.1992) (trial court judgment vacated and remanded for entry of judgment in accordance with settlement agreement); *Ethicon, Inc. v. Martinez*, 835 S.W.2d 826 (Tex.App.—Austin 1992, writ denied); *Investment Properties Mgt. v. Montes*, 821 S.W.2d 691 (Tex.App.—El Paso 1991, no writ); and *Paragon Hotel Corp. v. Ramirez*, 783 S.W.2d 654 (Tex. App.—El Paso 1989, writ denied).

We find these cases to be distinguishable. In *Borden*, there was evidence that Borden fired the employee after he refused to see a doctor of its choice before consulting with his attorney, when the employee had a pending compensation claim, and there had been an agreement at a prehearing conference of the Industrial Accident Board that the employee would be examined by a mutually acceptable physician. The court noted that the jury could have concluded that Borden was attempting to impede his relationship with his attorney. *Borden, Inc.*, 825 S.W.2d at 717–18. This factual scenario has no comparable basis in the facts of this case.

■ In *Ethicon, Inc.*, one of the company doctors, after the employee had received

a worker's compensation award, stormed into his office, slammed the door, and exclaimed, "Damn it. Alma got $12,000 and I'm not going to let her back in the plant." *Ethicon, Inc.*, 835 S.W.2d at 829. There was testimony that he had done the same thing once before when another employee had received an award from the Industrial Accident Board. The doctor then drafted the medical disqualification memo used as the basis for discharging the employee. *Id.* at 829. In this case, no one connected with management or with Tidwell's discharge made such a statement. The fact that several years earlier a nonmanagement employee speculated concerning management's views on such claims is not probative concerning management's views as to Tidwell's compensation claim.

In *Investment Properties Mgt.*, there was evidence showing a negative attitude toward the injury and the claim, as well as evidence showing that the company did not follow its policies with regard to the hiring and discharging of employees. *Investment Properties Mgt.*, 821 S.W.2d at 694–95. There is no such evidence in this case.

Finally, in *Paragon Hotel Corp.*, there was also evidence of antagonism toward the employee's injured condition, his doctor's evaluations, and the resulting disruption of his availability for work; there was evidence of a contest that appeared to be designed to discourage such claims; and there was evidence that management did not follow personnel policies with respect to progressive disciplinary procedures. *Paragon Hotel Corp.*, 783 S.W.2d at 658–59. Again, there is no comparable evidence in this case. We overrule point of error number one and sustain point of error number two.

Tri–County urges in points of error numbers three and four that there is no evidence, or, alternatively, insufficient evidence, to support the jury's finding that Tidwell was damaged as a result of his termination. Tri–County urges that since the evidence shows that Tidwell had not obtained a full release there is no evidence that he could have returned to work had he not been discharged.

The jury found that Tidwell suffered damages as a result of the wrongful discharge and assessed those damages at $27,360 in past lost wages and benefits.

Tidwell testified that the first time he had returned to work, Allen knew that he was not supposed to jump fences, a necessary duty in reading meters in Tri–County's rural territory. He also indicated that his job did not require lifting more than the designated fifty to sixty pounds to which he was restricted in his second release, and that meter readers were no longer allowed to go out on emergency calls. There was additional testimony that historically meter readers had participated in assisting linemen in emergencies.

We have previously set forth testimony showing that Tri–County never allowed an employee to work without a full release. Also, as previously noted, Tidwell acknowledged that Tri–County did not allow employees to work without a full medical release and that he had such a release when he first returned to work following his injury.

We agree with Tri–County that there is no evidence that Tidwell would have been allowed to return to work without a full medical release even if he had not been terminated.

■ The correct measure of damages for discharge of an employee for filing a compensation claim is the amount of money the employee would have earned had he not been terminated, less the sum of money which he did in fact earn after his termination. *DeFord Lbr. Co.*, 615 S.W.2d at 237. There was no testimony as to the amount of any benefits, as opposed to wages, that Tidwell might have lost from the time of his termination until the time of trial. Consequently, there was no evidence by which the jury could have ascertained any damage to Tidwell. Tidwell does not really address the main thrust of Tri–County's contention under point of error number three. We sustain point of error number three. In view of our determination of point of error number three, we need not determine point of error number four.

We reverse and render judgment that Richard Tidwell take nothing in his claim against Tri–County Electric Cooperative, Inc. and that all costs of court, both here and at the trial court, be assessed against Tidwell.