Donna Huntsman **STEVENS,**
Appellant,

v.

**NATIONAL EDUCATION CENTERS, INC., Appellee.**

No. 14–97–01061–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

March 18, 1999.

Rehearing Overruled April 29, 1999.

David M. Gunn, Holman, Hogan, Dubose & Townsend, Dennis G. Herlong, Glickman, Herlong & Hughes. L.L.P., John E.

Spalding, Hanen, Alexander, Johnson & Spalding, Houston, for appellant Donna Huntsman Stevens.

Bryan P. Neal, Stephen F. Fink, Thompson & Knight, P.C., Dallas, William J. Boyce, Fulbright & Jaworski, L.L.P., Bradley M. Whalen, Stephen H. Lee, Doyle, Rider, Restrepo, Harvin & Robbins, L.L.P., Houston, for appellee National Education Centers, Inc.

Panel consists of Justices YATES, AMIDEI, and FOWLER.

## OPINION

LESLIE BROCK YATES, Justice.

Donna Huntsman Stevens, appellant, appeals the grant of a judgment notwithstanding the verdict (JNOV), in favor of National Education Centers, Inc. (NEC), appellee. Stevens was employed as an Admissions Director at NEC's Houston North vocational school. Pursuant to changes in government regulations, NEC altered its method of evaluating and compensating admissions personnel to a system based on the department's performance measured against the revenues the department was projected to generate. Stevens's performance faltered under this system. As a result of this poor performance and Stevens's inability to communicate effectively with staff and other directors, Raymond White, the school director, issued to Stevens two "Corrective Action" notices. The last notice, dated January 20, 1994, warned Stevens that her failure to make weekly progress in her budgets may result in termination.

On January 31, 1994, Stevens sustained a workplace injury and filed a workman's compensation claim, and remained on medical leave for this injury until March 29, 1994, at which time NEC terminated her employment. On August 30, 1995, Stevens filed an action against NEC, claiming that NEC violated chapter 451 of the Labor Code by terminating her employment in retaliation for filing a workers' compensation claim. The jury found in favor of Stevens, awarding her $71,200 in actual damages for lost earnings, $125,000 in damages for mental anguish, and $2.5 mil-

lion in exemplary damages. NEC moved for JNOV, which the trial court granted except as to the findings regarding liability and lost earnings damages. We affirm the JNOV as modified.

## STANDARD OF REVIEW

In reviewing the grant of a motion for JNOV, the appellate court must consider only the evidence and the reasonable inferences that support the jury's answers. *See Navarette v. Temple Indep. Sch. Dist.*, 706 S.W.2d 308, 309 (Tex.1986). If there is more than a scintilla of competent evidence to support the jury's finding, the JNOV will be reversed. *See Southern States Transp., Inc. v. State*, 774 S.W.2d 639, 640 (Tex.1989); *Navarette*, 706 S.W.2d at 309.

### *Actual Malice*

In her first point of error, Stevens contends the trial court erred in disregarding the jury's findings of malice and punitive damages. In order to recover exemplary damages under section 451.002 of the Labor Code, a plaintiff must prove that her employer acted willfully and with malice. *See Continental Coffee Prods. Co. v. Cazarez*, 937 S.W.2d 444, 452 (Tex.1996). In granting NEC's motion for JNOV, the trial court concluded that there was no evidence to support a finding of actual malice. "Actual malice is characterized by ill-will, spite, evil motive, or purposing the injuring of another." *See id.* An employer's violation of section 451.001 is an unlawful and wrongful act, but is not of itself ground for an award of exemplary or punitive damages. *See id.* at 454. Thus, only *egregious violations* of the statute will be subject to punitive awards. *See id.*

Stevens primarily relies on her own testimony and that of a former NEC employee, James Laird, in establishing actual malice. Laird testified that he was ordered by his supervisor to "dig up" whatever he could find that would substantiate some sort of complaint or charge against Stevens. Furthermore, Laird testified to being informed by two NEC executives

that Stevens was "faking her injury," and one thought that Stevens was a "malingerer." Laird also stated that an NEC executive expressed her disappointment in Stevens's inability to attend a training trip in California. Stevens asserted that White "flung" papers across the desk at her and told her to "work out" her communication problems with the other directors. Stevens further cited White's failure to contact her at the hospital or at home as evidence of the ill-will and hostility he bore towards her.

Based on this evidence, the jury found that NEC acted maliciously in firing Stevens. However, viewing this record in the light most favorable to the jury finding, it does not constitute more than a scintilla to support a finding of actual malice. As discussed below, portions of this evidence support a finding that Stevens was terminated for unlawful reasons; however, it fails to rise to the wanton or malicious standard articulated in *Continental Coffee*. *See id.* Likewise, evidence that Laird's supervisors were angry or disliked Stevens does not show that Stevens's termination was a product of NEC's ill-will, spite, or evil motive. *See id.* (concluding that evidence which tended to establish a violation of the anti-retaliation statute, including evidence of the employer's doubts of employee's injury, was not of the type of egregious violation for which punitive damages were appropriate); *Wal–Mart Stores, Inc. v. Holland*, 956 S.W.2d 590, 596 (Tex. App.—Tyler 1997, pet. granted) (holding that substantially more evidence than evidence regarding a manager's knowledge and anger over an employee's injury, threats of termination, and an employer's policy of discouraging workers' compensation claims is required for a finding of malice). In other words, there simply is not enough evidence to establish an egregious violation of the statute. Accordingly, the trial court did not err in granting JNOV in favor of NEC as to actual malice, and we overrule Stevens's first point of error.

## Actual Damages

■ In her second point of error, Stevens contends that the trial court erred in disregarding the jury's finding of actual damages. The jury made four findings with regard to Stevens's lost earnings; each figure differing depending on the projected termination of Stevens's employment with NEC. In its motion for JNOV, NEC argued and the trial court agreed, that the evidence was legally insufficient to support an award of damages for lost earnings beyond June 28, 1994, the date the Houston North School closed.

■ The proper measure of lost wages damages for a violation of chapter 451 is the amount of money the employee would have earned had he or she not been discharged in violation of the statute. *See* TEX. LAB.CODE ANN. § 451.002(a) (Vernon 1996); *Tri–County Elec. Coop. Inc. v. Tidwell,* 859 S.W.2d 109, 113 (Tex.App.—Fort Worth 1993, pet. denied). Stevens argues that NEC had an informal policy of transferring employees from closing schools to other NEC schools in operation. Thus, according to Stevens, the proper measure of lost wages damages should extend beyond June 28, 1994, for she would have been subject to the transfer policy and would have been employed by NEC until it sold its last school in 1995. In support of this contention, Stevens presented Laird's testimony regarding his knowledge of other employees who had been transferred. However, Laird's testimony does not clarify the context of these transfers. Rather, Laird testified to events occurring during his tenure, transfers that occurred prior to any closings of NEC schools. Thus, from this testimony, we can infer that the transfers to which Laird refers, are transfers made for reasons other than school closings.

Stevens also relies on Sonya Sanders's testimony. Sanders, a former employee for NEC, testified that in October 1993 she spoke with the vice-president of human resources and sought re-employment with NEC. However, the vice-president told her "that they had to first find positions for the directors of admissions of two or three other campuses that they had closed and that was the priority...." This testimony is consistent with that of Myra Dembiec, an NEC executive, who stated that employees from closed schools were *considered* for openings in other schools *if* the employees' skill levels "matched" and the employees "expressed an interest" in transferring.

This evidence is not legally sufficient to support the jury's finding of actual damages beyond June 28, 1994. The evidence Stevens presented infers that NEC considered transferring employees under certain circumstances. Stevens did not present evidence that NEC had a formal transfer policy. In fact, Stevens presented no evidence that NEC transferred employees from the Houston North School to any other school in operation, although NEC had schools in operation until the latter half of 1995. Thus, no more than a scintilla of evidence existed to support the jury finding that Stevens suffered lost earnings greater than the amount recognized by the trial court. Recovery for more than that amount would be speculative and impermissible.

■ Under this point of error, Stevens further argues that the trial court erred in disregarding the jury finding of past mental anguish damages.[1] An award of mental anguish damages will survive a legal sufficiency challenge when the plaintiffs have introduced direct evidence of the nature, duration, and severity of their mental anguish, thus establishing a substantial disruption in the plaintiff's daily routine. *See Parkway Co. v. Woodruff,* 901 S.W.2d 434, 444 (Tex.1995). If there is no direct evidence, the Court will apply traditional "no evidence" standards to determine whether the record reveals any

---

1. Stevens has decided not to challenge the JNOV with respect to the future mental anguish damages; consequently, this court will not address the issue.

evidence of a high degree of mental pain and distress that is more than mere worry, anxiety, vexation, embarrassment, or anger to support any award of damages. *See id.*

Stevens testified to feeling devastated and depressed as a result of her termination. She stated that she did not leave the house much after her termination and she lost weight. Furthermore, Linda Garcia, Stevens's sister, testified that she witnessed Stevens's devastation and depression. She stated that Stevens did not eat for a long time, lost weight, and became very moody. We find that this evidence is legally sufficient to support a jury finding of past mental anguish because Stevens presented some evidence of the nature, duration and severity of her mental anguish.

■■■ NEC contends on a cross appeal that the evidence is factually insufficient to support the jury finding of past mental anguish. In reviewing the factual sufficiency of the evidence, the court must consider and weigh all the evidence. *See Plas–Tex Inc. v. U.S. Steel Corp.*, 772 S.W.2d 442, 445 (Tex.1989). The appellate court will disregard a finding when it is so contrary to the overwhelming weight and preponderance of the evidence as to be clearly wrong and unjust. *See Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986).

We find that the above evidence is factually sufficient to support an award for past mental anguish. NEC has not presented evidence contradicting Stevens's evidence. Absent such evidence, Stevens's and Garcia's testimonies are sufficient to support a finding of past mental anguish.

NEC also contends that the trial court erred in instructing the jury as to the proper legal definition of "mental anguish." Specifically, NEC asserts that the trial court erred in allowing the jury to award damages for "mental anxiety, humiliation, and embarrassment in the past," a standard less than that established for compensable mental anguish. NEC's argu-ments are based on its beliefs that "mental anguish" is a technical legal term that requires definition. A trial court must define words and phrases that have a technical legal meaning. *See Turner v. Roadway Express, Inc.,* 911 S.W.2d 224, 227 (Tex.App.—Fort Worth 1995, writ denied); *City of San Antonio v. Dunn,* 796 S.W.2d 258, 263 (Tex.App.—San Antonio 1990, writ denied). We have held, however, that mental anguish is not a legal term, but is of ordinary significance and meaning. *See Gulf States Utilities Co. v. Reed,* 659 S.W.2d 849, 854 (Tex.App.—Houston [14 th Dist.] 1983, writ ref'd n.r.e.). Accordingly, the trial court did not err in refusing to submit to the jury NEC's definition of mental anguish.

Notwithstanding, NEC cites to *Parkway Co.* for the proposition that recovery for mental anguish required presentation of evidence that is "more than mere worry, anxiety, vexation, embarrassment, or anger." *Parkway Co.,* 901 S.W.2d at 444. However, in *Parkway Co.,* the Court limited its inquiry to the type of evidence required to support an award of damages for mental anguish. *See id.* at 442. The Court did not address the appropriate definition of mental anguish, nor whether such a definition is required in a jury charge. Nevertheless, NEC asserts that the trial court erred in submitting the charge because it permitted the jury to award Stevens mental anguish damages under a lesser standard of measurement. Although NEC's argument has some merit, the submission, if error, was harmless.

In order to determine whether an error in the jury charge is harmful, an appellate court must consider the pleadings of the parties, the evidence presented at trial, and the charge in its entirety. *See Island Recreational Dev. Corp. v. Republic of Texas Sav. Ass'n,* 710 S.W.2d 551, 555 (Tex.1986). The submission must be considered as a whole to determine whether the error was prejudicial. *See Turk v. Robles,* 810 S.W.2d 755, 759 (Tex.App.—Houston [1 st Dist.] 1991, writ denied).

Under the harmless error rule, TEX.R.APP. P. 44.1, NEC must persuasively demonstrate that it has suffered harm from submission of the defective instruction. *See Nacol v. McNutt*, 797 S.W.2d 153, 156 (Tex.App.—Houston [14 th Dist.] 1990, writ denied). NEC has not done so here.

Through its suppositions, NEC would like the court to believe that this submitted instruction led the jury to award damages under a lesser standard of measurement. However, while this is a possibility, we are not privy to the jury's thoughts during deliberations, and a possibility is simply not a sufficient showing of harm under TEX.R.APP. P. 44.1. Moreover, we have already concluded that the evidence is factually and legally sufficient to support a finding of mental anguish damages under the standards expressed in *Parkway Co.* Therefore, the error in submitting the instruction, if there was any, is harmless. Consequently, NEC's cross-point is overruled and we reverse the JNOV with respect to mental anguish damages.

## LIABILITY UNDER SECTION 451.001

In their cross-appeal, NEC challenges the legal sufficiency of the jury finding regarding liability under section 451.001 of the Labor Code. According to the Texas Supreme Court, in order to establish a claim under section 451.001, the plaintiff must show that the employer's discriminatory action (terminating Stevens) would not have occurred when it did had the worker's compensation claim not been filed. *See Cazarez*, 937 S.W.2d at 450.

Evidence presented at trial established the fact that Stevens was a good producer. NEC did not contradict this evidence, but rather justified their action by presenting evidence of Stevens's lack of performance under their new bonus system; White, Nodal, and Dembiec (NEC executives) testified that Stevens was not meeting her projected revenues or starts. However, Stevens presented Laird's testimony regarding NEC's directives to him to "dig up" evidence on Stevens to corroborate complaints against her. Furthermore, Laird testified to one NEC executive informing him that he felt Stevens was faking her injury, and another executive describing Stevens as a "malingerer." Laird also testified that one NEC executive told him immediately after the termination meeting that "We decided to fire her when she went out."

Because there is some evidence that NEC's explanation for Stevens's termination may have been fabricated, and that at least two NEC executives expressed their doubts as to Stevens's injury, the jury could infer that NEC violated section 451.001. Thus, we find that this evidence constitutes more than a scintilla of evidence to support a finding of NEC's liability. Therefore, we overrule NEC's cross-appeal.

In sum, we affirm the JNOV except with regards to mental anguish damages. We hold that Stevens is entitled to past mental anguish damages and lost earnings damages from the date of Steven's discharge to June 28, 1994.

We affirm the trial court's judgment as modified.

WANDA McKEE FOWLER Justice, concurring and dissenting.

I join in the court's opinion in every respect except for its conclusion that the submission of the "mental anguish" questions was harmless error. I understand the desire to uphold the jury's verdict, especially since we have held that the record contains evidence of mental anguish, but, in my opinion, the wording of the questions was harmful because it imposed the wrong burden on the plaintiff. As I discuss below, this in turn created two fatal problems: (1) the error probably caused the rendition of an improper verdict, and (2) the jury's findings on these issues do not support the mental anguish verdict. Consequently, I would affirm the trial judge's decision to grant a judgment non obstante verdicto on this issue.

At trial, the charge, at Stevens' request and over the objection of NEC, asked about damages in this way:

> What sum of money, if any, if paid now in cash, would fairly and reasonably compensate Donna Stevens for her injury damages, if any, resulting from the discharge or discrimination which you have found?
>
> \* \* \*
>
> Consider the following elements of damage, if any, and none other.
>
> Answer in dollars and cents, if any.
>
> \* \* \*
>
> e. *mental anxiety, humiliation, and embarrassment in the past* $ 100,000
>
> f. *mental anxiety, humiliation, and embarrassment* which, in reasonable probability, she will suffer in the future      $ 25,000

As noted below, this question asked the jury to consider evidence below the level required for a person to recover mental anguish damages.

In 1995, the Texas Supreme Court unequivocally held that a plaintiff can recover mental anguish damages only if the record reveals direct evidence of the nature, duration, or severity of their anguish establishing a substantial disruption in the plaintiff's daily routine and/or evidence showing " 'a high degree of mental pain and distress' that is *'more* than mere worry, anxiety, vexation, embarrassment, or anger.' " *Parkway Co. v. Woodruff,* 901 S.W.2d 434, 444 (Tex.1995) (emphasis added). In spite of this direction from the supreme court, the jury here was told to give damages for "anxiety, humiliation, and embarrassment." In short, the jury was given a lower burden than the law requires.

Courts have held that this type of error is reversible error. Specifically, they have held that an instruction that misleads the jury is improper. *See Southwestern Bell Tel. Co. v. John Carlo Texas, Inc.,* 843 S.W.2d 470, 472 (Tex.1992) (holding that it probably caused the rendition of an improper judgment when the jury was given an improper legal definition to the essential legal issue of the case); *Boatland of Houston, Inc. v. Bailey,* 609 S.W.2d 743, 749–50 (Tex.1980) (holding that error in the submission of an issue was harmless except when the erroneously submitted issue confused or misled the jury); *McReynolds v. First Office Management,* 948 S.W.2d 342, 344 (Tex.App.—Dallas 1997, no writ) (holding that an instruction that misstates the law or misleads the jury is improper).

Courts also have found reversible error when the charge imposed a greater burden on the plaintiff than the law requires. *See Dutton v. Southern Pacific Transp.,* 576 S.W.2d 782, 785–86 (Tex.1978); *Line Enters., Inc. v. Hooks & Matteson Enters., Inc.,* 659 S.W.2d 113, 117 (Tex.App.—Amarillo 1983, no writ). In light of this line of cases, I fail to see why it also should not be reversible error to impose a lesser burden on the plaintiff, especially when the supreme court has held in prior case law that the evidence the jury was told to examine would not support damages. *See Parkway,* 901 S.W.2d at 444–45. When the jury is told to look only for evidence that does not meet the level required by law, how can we say that error probably did not cause the rendition of an improper judgment?

In addition to the above, I also am of the opinion that the judge properly struck the jury's answers to the mental anguish question, because these findings are immaterial and will not support the judgment. *See Southwestern Bell Tel. Co.,* 843 S.W.2d at 472 (holding that the charge did not ask a jury the ultimate issue in a tortious interference contract suit and therefore the jury findings did not support the judgment). It did not matter what the jury thought Stevens should receive for mental anxiety, humiliation, and embarrassment. An appropriate inquiry for mental anguish

damages does not consider "mere" anxiety, humiliation, and embarrassment. An appropriate inquiry either looks for a substantial disruption in the plaintiff's daily routine, or looks for " 'a high degree of mental pain and distress' that is 'more than mere worry, anxiety, vexation, embarrassment, or anger.' " *See Parkway,* 901 S.W.2d at 444. Thus, the jury's finding of mental anxiety, humiliation and embarrassment has no legal significance and should be reversed for this reason. *See id.*

In reaching this conclusion, I recognize that the court did not have to define mental anguish for the jury. However, that does not change my opinion. Even though the court did not have to give a definition of mental anguish, once it chose to give one, it had to give an accurate definition. *See, e.g., McReynolds,* 948 S.W.2d at 344.

I also am aware of cases holding as the majority does in this case, that an error in the submission of an invalid legal theory in a question can be harmless if other valid legal theories are included within the same question. *See Hart v. Berko, Inc.,* 881 S.W.2d 502, 510–11 (Tex.App.—El Paso 1994, writ denied) (holding that, while it was possible that the jury made an affirmative finding based on one improper theory of liability submitted along with several valid theories, a possibility is not a probability as required by Rule 44.1 of the Texas Rules of Appellate Procedure); *see also Provident American Ins. Co. v. Castaneda,* 988 S.W.2d 189 (Tex. 1998) (stating that the court would not reach the question of whether a trial court's judgment may be affirmed if a liability question includes a theory that is not legally cognizable but other viable theories are included within the same question.) However, this case is distinguishable from that line of cases. In those cases, the jury had several valid theories to pick from in deciding whether to impose damages. *See Hart,* 881 S.W.2d at 511. Here, the jury had only one option from which to choose, and that option was wrong. If the jury followed the charge's direction, and we pre-

sume it did, see *Tucker v. Terminix Int'l Co., L.P.,* 975 S.W.2d 797, 800 (Tex.App.—Corpus Christi 1998, pet. filed), it was not looking for the right quality of evidence. In this case, how can we say that is not reversible error?

In conclusion, unlike the majority, I would affirm the trial court's decision to grant a judgment non obstante verdicto as to the mental anguish questions. In all other respects, I join in the majority's opinion.