**METAL INDUSTRIES, INC. OF CALIFORNIA d/b/a Kwik–Way Corporation, Appellants,**

v.

**Annie M. FARLEY, Appellee.**

No. 06–99–00068–CV.

Court of Appeals of Texas, Texarkana.

Submitted Sept. 14, 2000.

Decided Oct. 24, 2000.

John R. Mercy, Mercy, Carter & Elliott, LLP, Texarkana, for appellant.

Kenneth L. Ross, Lance W. Hinson, Ross, Hudgens & Graves, Longview, for appellee.

Before CORNELIUS, C.J., GRANT and HILL, JJ. (JOHN HILL, Sitting by Assignment).

## OPINION

Opinion by Justice GRANT.

Annie M. Farley became an employee of Metal Industries, Inc. of California d/b/a Kwik–Way Corporation when it purchased the Mount Pleasant factory at which she had been employed for the previous fifteen years doing work involving repetitive motions with her hands. When Ms. Farley began experiencing problems with her hands, she reported it to her supervisor and asked to see a doctor. Her request was immediately granted, and she was ultimately diagnosed with carpal tunnel syndrome, for which she underwent surgery on both wrists and a subsequent surgery to correct a resulting finger drop.

Ms. Farley qualified for light-duty release and returned to work after an absence of approximately two months. In compliance with Ms. Farley's light-duty release requiring that she lift no more than ten to fifteen pounds and refrain from repetitive motions with her hands, Metal Industries first provided her with clerical duties and then with work on a foot-operated machine in the screen door department. This latter job required repetitive motions with her hands to a lesser extent than any of her previous assembly-line work at the facility. During this month in the screen door department, Ms. Farley was relieved of the regular quota requirement, and other employees were instructed to do her lifting for her.

Two months after her return and one month after she began working in the screen door department, Ms. Farley's doctor ordered that she attend a one-month work hardening program, which ultimately enabled her to increase her work abilities to lifting twenty to twenty-five pounds. Ms. Farley returned to work operating the foot-operated machine in the screen door department for approximately one month and worked all assigned shifts with no complaints from her superiors, prior to the May 1996 meeting with plant manager Jerry Hunter at which her employment was terminated.

Testimony regarding what happened in the May 1996 meeting differs. While Ms. Farley testified Mr. Hunter informed her she would be permanently laid off, Mr. Hunter testified that Ms. Farley requested to be laid off because she felt that she could no longer do the work.

Ms. Farley brought an action under Texas Labor Code §§ 451.001 through 451.003 (the Anti–Retaliation Statute), which prohibits discriminatory practices against employees who have been injured on the job, instituted or caused to be instituted in good faith any proceeding under

the Texas Workers' Compensation Act, hired a lawyer, filed a workers' compensation claim, or testified in a workers' compensation proceeding. TEX.LAB.CODE ANN. §§ 451.001–.003 (Vernon 1996). Following a full jury trial on the merits, the jury returned a verdict finding that Metal Industries had discharged or discriminated against Ms. Farley in violation of the Anti–Retaliation Statute. The jury assessed compensatory damages at $108,500, representing past and future lost earnings and benefits and mental anguish. Pursuant to the jury verdict, the trial court rendered judgment for Ms. Farley for $121,194.71. Metal Industries appeals the judgment and damages award.

On appeal Metal Industries contends (1) the evidence was legally and factually insufficient to support the jury's finding of a causal link between Ms. Farley's workers' compensation claim and her discharge; (2) the evidence did not support an award of past and future lost earnings and benefits that extend beyond the date of the plant's closure; (3) the evidence did not support an award of mental anguish damages.

 In its first point of error, Metal Industries contends that the evidence did not support the jury's finding that it violated the Anti–Retaliation Statute. To prove a violation of the Anti–Retaliation Statute, a plaintiff is required to prove as part of her prima facie case a causal link between the filing of her workers' compensation claim and her discharge. Metal Industries contends Ms. Farley's evidence on this point was legally insufficient, pointing to the lack of direct evidence of such a causal link and arguing that the small amount of circumstantial evidence presented amounts to no evidence at all. Metal Industries also attacks the factual sufficiency of the evidence contending that, due to a failure of proof on the causation issue, the great weight of the evidence dictates a finding it did not violate the Anti–Retaliation Statute.

 In reviewing the evidence for legal sufficiency, we consider only the evidence and inferences supporting the jury's findings and disregard all evidence and inferences to the contrary. *Redman Homes, Inc. v. Ivy*, 920 S.W.2d 664, 667 (Tex.1996). Anything more than a scintilla of evidence is legally sufficient to support the jury's finding. *Read v. Scott Fetzer Co.*, 990 S.W.2d 732, 737 (Tex.1998). As such, we must determine whether the proffered evidence as a whole rises to a level that would enable reasonable and fair-minded people to differ in their conclusions. *Transp. Ins. Co. v. Moriel*, 879 S.W.2d 10, 25 (Tex.1994).

 This court has previously held that the Anti–Retaliation Statute requires an employee to prove a causal link between the filing of a workers' compensation claim and subsequent discharge. *Hogue v. Blue Bell Creameries, L.P.*, 922 S.W.2d 566, 569 (Tex.App.—Texarkana 1996), *writ denied*, 930 S.W.2d 88 (Tex. 1996) (per curiam). The Texas Supreme Court has established the standard of causation for this purpose: the employee's protected conduct must be such that, without it, the employer's prohibited conduct would not have occurred when it did. *Cont'l Coffee Prods. Co. v. Cazarez*, 937 S.W.2d 444, 450 (Tex.1996). Thus, Ms. Farley was required to prove that, but for her filing of a workers' compensation claim, Metal Industries would not have fired her when it did. Circumstantial evidence that may show this causal link includes (1) knowledge of the compensation claim by those making the decision to terminate; (2) a negative attitude toward the employee's injured condition; (3) failure to adhere to established company policies; (4) discriminatory treatment of the injured employee in comparison to similarly situated employees; and (5) evidence that the stated reason for discharge was false. *Id.* at 451.[1] Moreover, at least two appellate

---

1. The fifth type of circumstantial evidence, evidence that the stated reason for discharge was false, has not heretofore been used by this court in this type of case. *See, e.g., Hogue*

courts ruling on the issue since *Continental Coffee* have interpreted that decision to mean strong evidence showing the stated reason for discharge is false is alone a sufficient basis from which to infer a causal link between an employee's workers' compensation claim and subsequent discharge. *See Wyler Indus. Works, Inc. v. Garcia,* 999 S.W.2d 494, 501 (Tex.App.—El Paso 1999, no pet.); *Duhon v. Bone & Joint Physical Therapy Clinics,* 947 S.W.2d 316, 319 (Tex.App.—Beaumont 1997, no writ).

With respect to point (1), it is undisputed that the parties making the decision to fire Ms. Farley were aware that she had filed a workers' compensation claim. Regarding point (3), Metal Industries' Director of Human Resources, Doug Bartal, testified that Metal Industries had a policy never to terminate an employee injured on the job unless the employee chose to take a voluntary termination and that the company's aggressive back-to-work policy dictated employees be given every opportunity to continue on light duty. Crediting Ms. Farley's testimony, as we must in a no-evidence challenge, that she did not choose to terminate her employment, but rather that she was involuntarily terminated, we can only conclude Metal Industries violated its established company policies by placing Ms. Farley on permanent layoff against her will. In a final point regarding company policy, although Ms. Farley suggests Metal Industries departed from its established company policies by not *offering* her medical leave so that she could maintain her insurance benefits for some further period, such a departure from policy would be demonstrated rather by a refusal to *grant* such leave had she requested it, which she did not do.

Finally, with regard to point (4), Ms. Farley presented evidence that Metal Industries' stated reason for discharge was false. Although Metal Industries takes the position that she quit, Ms. Farley testified that Mr. Hunter told her he was placing her on permanent layoff due to cutbacks. Mr. Hunter testified, however, that he used the word "permanent" on her termination notice so that he would be able to hire someone to replace Ms. Farley. He also testified that he designated "permanent layoff" as the reason for Ms. Farley's departure to aid her in a claim for unemployment benefits, but later acknowledged that whether a layoff was permanent was immaterial to a claim for unemployment benefits. Metal Industries' response to the Texas Workforce Commission listed "reduction in workforce" as the reason for Ms. Farley's termination. But Metal Industries' personnel director, Rhonda Kittle, testified that Metal Industries' response to the Texas Workforce Commission's inquiry was untrue. Finally, evidence showed that 101 people had been hired between the date of Ms. Farley's discharge and the end of 1997. This conflicting evidence permits an inference that Metal Industries' stated reason for discharge, assuming it did discharge Ms. Farley, was false.

*v. Blue Bell Creameries, L.P.,* 922 S.W.2d 566, 569 (Tex.App.—Texarkana 1996), *writ denied,* 930 S.W.2d 88 (Tex.1996) (per curiam). In *Continental Coffee Prods. v. Cazarez,* the Texas Supreme Court quotes for purposes of review an appeals court standard that includes this type of evidence and neither approves nor disapproves of the list. The Texas Supreme Court did, however, go on to rely heavily on this type of evidence in upholding the appeals court. *Cont'l Coffee Prods. v. Cazarez,* 937 S.W.2d 444, 451 (Tex.1996). Moreover, other appeals courts that have addressed the issue have included this type of circumstantial evidence in their analyses. *See, e.g., Jenkins v.*

*Guardian Indus. Corp.,* 16 S.W.3d 431, 436 (Tex.App.—Waco 2000, no pet. h.); *Wyler Indus. Works, Inc. v. Garcia,* 999 S.W.2d 494, 501 (Tex.App.—El Paso 1999, no pet.); *Gorges Foodservice, Inc. v. Huerta,* 964 S.W.2d 656, 665 (Tex.App.—Corpus Christi 1997, no writ); *Cont'l Coffee Prods. Co. v. Cazarez,* 903 S.W.2d 70, 78 (Tex.App.—Houston [14th Dist.] 1995), *aff'd in part, rev'd in part on other grounds,* 937 S.W.2d 444 (Tex.1996). *Cf., Texas Animal Health Comm'n v. Garza,* 27 S.W.3d at 59–60 (Tex.App.—San Antonio 2000, no pet. h.). As such, and because it is pertinent to the facts of this case, we include it in our analysis.

Referring to the above five-point list, Ms. Farley presented some evidence that the parties making the decision to fire her were aware of her claim, that Metal Industries did not adhere to established company policies, and that the stated reason for discharge was false.[2] Applying the legal sufficiency standards stated above, we find this evidence sufficient to support the jury's finding that Metal Industries violated the Anti–Retaliation Statute.

When considering a factual sufficiency challenge to a jury's verdict, we must consider and weigh all of the evidence, not just that evidence which supports the verdict. *Mar. Overseas Corp. v. Ellis*, 971 S.W.2d 402, 406–07 (Tex.1998). We set aside the verdict only if it is so contrary to the overwhelming weight of the evidence that the verdict is clearly wrong and unjust. *Id.* at 407. We may not pass on the witness's credibility or substitute our judgment for that of the jury, even if the evidence would clearly support a different result. *Id.*

Metal Industries contends that the jury's finding of a causal link between Ms. Farley's termination and her workers' compensation claim is contrary to the great weight of the evidence. Ms. Farley's circumstantial evidence on the causation issue was met with testimony of Metal Industries' employees who explained the departure from established company policies and the false statements regarding the reason for her discharge as measures taken to help Ms. Farley secure unemployment benefits. They further testified that she was not terminated, but rather that she quit. Nevertheless, it would not have been against the great weight and preponderance of the evidence for the jury, crediting Ms. Farley's testimony and discounting that of Metal Industries' employees, to have inferred a causal connection between her discharge and her workers' compensation claim. We overrule point one.

In its second and third points of error, Metal Industries contends that even if Ms. Farley did properly prove a violation of the Anti–Retaliation Statute, the evidence does not support the damages award. Metal Industries argues that an award of damages for past and future lost earnings and benefits beyond March 31, 1998, the date on which Metal Industries ceased operations at its plant in Mount Pleasant, is improper. Metal Industries further argues that the evidence does not support an award of mental anguish damages.

The proper measure of lost wages damages for a violation of the Anti–Retaliation Statute is the amount the employee would have earned had she not been discharged in violation of the statute. *See* TEX.LAB.CODE ANN. § 451.002(a); *Canutillo Indep. Sch. Dist. v. Olivares*, 917 S.W.2d 494, 500 (Tex.App.—El Paso 1996, no writ). With respect to future lost wages, a plaintiff is not required to prove an exact amount, but only facts from which a jury can determine the proper amount. *Goodman v. Page*, 984 S.W.2d 299, 305 (Tex. App.—Fort Worth 1998, pet. denied) (citing *McIver v. Gloria*, 140 Tex. 566, 169 S.W.2d 710, 712 (1943)).

Metal Industries contends Ms. Farley cannot as a matter of law recover damages for lost wages after March 31, 1998, because it ceased operating its Mount Pleasant plant on that date, and she would consequently no longer have been a Metal Industries employee as of that date. It cites *Stevens v. Nat'l Educ. Ctrs., Inc.* in support of its argument. 990 S.W.2d 374, 378 (Tex.App.—Houston [14th Dist.] 1999), *pet. ref'd*, 11 S.W.3d 185 (Tex.2000) (per curiam). In its review of the damages award in an Anti–Retaliation Statute case, the *Stevens* court found the evidence legal-

---

2. Ms. Farley points to no competent evidence in the record that Metal Industries displayed a negative attitude toward her injured condition or that she was subject to discriminatory treatment in comparison to similarly situated employees. Indeed, as Metal Industries points out, it made every attempt to expediently address her injury and to accommodate Ms. Farley both before and after her surgeries.

ly insufficient to support an award of damages beyond the date of a school's closing because no evidence was presented that the school had a formal transfer policy or that it had on closing transferred any of its employees to other schools. In the instant case, Wing Industry employees testified that Wing Industries, the company to whom Metal Industries leased the premises and equipment on March 31, 1998, now employs substantially all of Metal Industries' former employees doing near or about their former jobs at near or about their former wages and benefits. The evidence shows ownership of the Mount Pleasant plant had changed at least two times during Ms. Farley's tenure, and she had always maintained her employment, as had most other plant employees. Moreover, Ms. Farley testified that she had no difficulty working in the screen door department after the work hardening program and that she intended to work at the Mount Pleasant facility until retirement. Although Wing Industries had no legal obligation to hire Ms. Farley, these facts show that she established at least a probability that it would have done so had she been a Metal Industries employee when Wing Industries leased the facilities. Ms. Farley also offered the testimony of an expert, Dr. Tim Kane of the University of Texas at Tyler, on the issue of calculating past and future lost earnings. Ms. Farley presented facts from which the jury could determine a proper damages award. Her testimony that she planned to continue at the plant, together with testimony that almost all Metal Industries employees maintained their employment after the premises were leased to another manufacturer amounts to more than a scintilla of evidence in support of the jury's damages award.

 Metal Industries contends the evidence does not support the jury's award of mental anguish damages. A legal sufficiency challenge on this point must fail where a plaintiff has introduced either "direct evidence of the nature, duration, and severity of mental anguish, thus establishing a substantial disruption in the daily routine" or other evidence of "a high degree of mental pain and distress that is more than mere worry, anxiety, vexation, embarrassment, or anger." *Parkway Co. v. Woodruff*, 901 S.W.2d 434, 444 (Tex. 1995). The Texas Supreme Court has acknowledged the difficulty of the reviewing court's task, noting that we must "distinguish between shades and degrees of emotion." *Id.*

 Ms. Farley offers her testimony and that of Sheila Littleton in support of the award of mental anguish damages. Ms. Littleton, Ms. Farley's workers' compensation adjustor, testified that Ms. Farley seemed to be distressed that she was losing her job; Ms. Farley testified on the issue of mental anguish as follows:

Q ... How did that make you feel, what he was doing, terminating you permanent?

A Well, the word "permanent" means "that's it" and it was hurtful.

I automatically felt that I was less of a person that [sic] I was before, it hurt my self esteem, I was devastated and scared, angry, I felt like I had really been betrayed because I had went through [the work hardening] program hoping to get my job back or a job that they thought I could do.

It effected [sic] my sleep, my nerves, I was irritable, hard—it's hard to cope with a disappointment like that. I was terribly disappointed.

While this evidence amounts to more than a scintilla in support of the jury's award of mental anguish damages, it fails to establish by direct evidence a substantial disruption in Ms. Farley's daily routine as required to survive a factual sufficiency challenge. Absent such a showing by direct evidence, we must evaluate whether circumstantial evidence demonstrates a high degree of mental pain and distress that is more than mere worry, anxiety, vexation, embarrassment, or anger.

In addition to experiencing feelings of loss of self-esteem, anger, devastation, and

betrayal, Ms. Farley testified to experiencing loss of sleep and effects on her nerves. Applying the Texas Supreme Court's standards and taking into consideration the application that has been made by other appeals courts of the state, we find the jury's finding that Ms. Farley suffered compensable mental anguish is not against the great weight and preponderance of the evidence. *See Texas Animal Health Comm'n v. Garza,* 27 S.W.3d 54 (Tex. App.—San Antonio 2000, no pet. h.) (upholding mental anguish damages where plaintiff presented testimony that he was depressed and irritable and experienced sleeplessness and hives); *Wyler Indus. Works,* 999 S.W.2d at 509 (upholding mental anguish damages where plaintiff testified to a loss of self-esteem, humiliation, marital discord, and sleeping difficulties); *Stevens,* 990 S.W.2d at 379 (upholding mental anguish damages award where plaintiff testified to feelings of devastation and depression and to a loss of weight); *Goodman,* 984 S.W.2d at 306 (upholding mental anguish damages award where plaintiff testified to feelings of devastation and humiliation and experienced stomach problems). Thus, we overrule point three.

We affirm the trial court's judgment.

ROSS, J., not participating.