**HERTZ EQUIPMENT RENTAL CORPORATION, Appellant,**

v.

**Kyle BAROUSSE, Appellee.**

No. 01–10–00949–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

July 28, 2011.

David Jude Comeaux, Stephen Eric Hart, Ogletree Deakins Nash Smoak & Stewart, P.C., Houston, TX, for Appellant.

Jeffrey N. Todd, The Law Firm of Alton C. Todd, Friendswood, TX, Lain Gordon Simpson, Simpson, P.C., Houston, TX, for Appellee.

Panel consists of Justices JENNINGS, BLAND, and MASSENGALE.

## OPINION

JANE BLAND, Justice.

Kyle Barousse, an employee of Hertz Equipment Rental Corporation (Hertz), filed a worker's compensation claim after he sustained injuries in a collision that occurred while he was riding as a passenger in a company vehicle. Hertz fired Barousse the day he returned from medical leave for those injuries, and Barousse sued Hertz under section 451.001(1) of the Texas Labor Code, contending that it terminated his employment in retaliation for filing the worker's compensation claim.

After a bench trial, the trial court entered judgment awarding Barousse $665,000 in compensatory damages and $100,000 in exemplary damages. Hertz challenges the legal and factual sufficiency of the evidence supporting the trial court's retaliatory discharge finding and its compensatory and exemplary damages findings. Hertz also contends that the trial court abused its discretion in excluding evidence of Barousse's settlement of his personal injury lawsuit.

We hold that legally and factually sufficient evidence supports the trial court's finding that Hertz violated the Texas workers' compensation anti-retaliation statute and the compensatory damages award, but the evidence does not support the punitive damages award. We further hold that the trial court did not abuse its discretion in excluding evidence of Barousse's personal injury settlement. We therefore vacate the award of punitive damages and affirm the remainder of the judgment.

## Background

Barousse, an eighteen-year employee of Hertz, held the position of region sales director for the central region. While out on a sales call on September 13, 2006, Barousse sustained serious back injuries after a truck ran into the company-owned vehicle in which he was riding.

Barousse initially paid his medical expenses out-of-pocket because he knew that the company did not want worker's compensation claims on its records. After trying to work for a few weeks, Barousse found that the injuries prevented him from continuing as before. On October 2, 2006, he filed a claim for workers' compensation and took a month's leave of absence.

At that time, Joe Newman had been the region sales manager and Barousse's immediate supervisor for approximately three months. In Barousse's absence, Newman, with the assistance of region human resources manager Regina Richardson, prepared memoranda to Barousse on October 10 and October 31. The first, entitled "Unsatisfactory Job Performance and 90-day Action Plan," itemized tasks that he felt required immediate improvement and warned Barousse that he would "be reevaluated on your performance ev-

ery 30 days for the next 90 days[,]" warning that, "[i]f the results of your reevaluation do not show significant improvement, your employment with [Hertz] will be terminated." In the second memo, entitled "Unsatisfactory Performance," Newman listed Barousse's failure to meet numerous job responsibilities and goals, including monthly goals.

Shortly after Barousse returned from medical leave, Newman met with him about his annual performance appraisal. Newman gave Barousse—who had previously received average reviews from his prior supervisor—the lowest possible rating of "unsatisfactory," meaning that his performance was unacceptable. The following week, Newman gave Barousse a written warning for unsatisfactory job performance, listing "several serious performance transgressions." Like the first October memo, this memo warned that Barousse's "[f]ailure to show consistent improvement with the issues listed and improve your performance will result in further disciplinary action, up to and including termination."

By November 29, Barousse determined that he could not perform his usual job duties without experiencing intense pain and went back on workers' compensation leave. This time, Barousse remained on leave for several months.

Meanwhile, Hertz began an effort to restructure its work force. Mark Alewel, the regional vice president, led the Houston regional office in devising a plan. By February 2007, Hertz management had identified Barousse as a candidate for layoff. Alewel also slated the region sales director position in the Dallas office, held by Kevin Smith, for elimination. As soon as the layoff plans were finalized in March, Alewel informed Smith that his position had been eliminated and offered Smith another position within the company, which he accepted. Three other region sales directors remained in their positions, and two years later, when their positions also were eliminated, they were offered and accepted other jobs with Hertz. Alewel and Newman consulted with human resources about the timing of Barousse's layoff and decided to wait to implement the decision when Barousse received a medical release and returned from leave.

In late September 2007, Barousse contacted Hertz human resources and informed Richardson that he was released to return to work as of October 1, 2007. Richardson asked Barousse to come to the office immediately. With Newman present, Richardson informed Barousse that the company had eliminated his job and that he was being laid off. Barousse received a severance packet offering him enhanced severance pay in exchange for a release of claims. Barousse declined to sign the release and filed this suit.

In its final judgment, the trial court ordered Hertz to pay Barousse "compensatory damages in the sum of $665,000.00 and exemplary damages of $100,000," with prejudgment interest on the $54,477.25 attributable to past damages. Relevant to this appeal, the trial court entered the following findings of fact and conclusions of law in support of its judgment:

- Barousse was discouraged from filing a valid workers' compensation claim.

- Mark Alewel, while acting within the course and scope of his employment as regional vice president, made the decision to terminate Mr. Barousse.

- The other four region sales directors were employees similarly situated to Barousse. Each of these similarly situated employees were offered alternate employment within Hertz at the time they were advised that their positions had been eliminated.

- Barousse was not offered alternate employment at the time he was advised his position was eliminated.
- Hertz discharged Barousse because he filed a worker's compensation claim in good faith, in violation of section 451.001 of the Texas Labor Code.
- Hertz acted with malice and gross negligence, causing harm to Barousse.

Hertz filed a request for additional findings of fact and conclusions of law, contending that the trial court omitted essential findings to show that the decision-makers evinced a specific intent to harm Barousse, namely: (1) that Barousse was physically able to perform the duties of region sales director at the time of his discharge; (2) that any alternate jobs paying comparable salaries and benefits were available at the time of Barousse's discharge; (3) relating to the nature, duration, and severity of Barousse's mental anguish; and (4) to support the punitive damages award. The trial court denied Hertz's request, and this appeal followed.

## Discussion

### I. Legal and factual sufficiency challenges

#### A. Standard of review

■ Hertz challenges the sufficiency of the evidence supporting the trial court's retaliatory discharge finding and the compensatory and punitive damages awards. We review the sufficiency of the evidence supporting a trial court's challenged findings of fact by applying the same standards that we use in reviewing the legal or factual sufficiency of the evidence supporting jury findings. *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex.1994). When the appellate record includes the reporter's record, the trial court's factual findings, whether express or implied, are not conclusive and may be challenged for legal

and factual sufficiency of the evidence supporting them. *See Middleton v. Kawasaki Steel Corp.*, 687 S.W.2d 42, 44 (Tex.App.-Houston [14th Dist.] 1985), *writ ref'd n.r.e.*, 699 S.W.2d 199 (Tex.1985).

■ In a bench trial, the trial court determines the credibility of the witnesses and the weight to be given their testimony. *Woods v. Woods*, 193 S.W.3d 720, 726 (Tex. App.-Beaumont 2006, pet. denied); *see also City of Keller v. Wilson*, 168 S.W.3d 802, 819 (Tex.2005). In resolving factual disputes, the trial court may believe one witness and disbelieve others, and it may resolve any inconsistencies in a witness's testimony. *McGalliard v. Kuhlmann*, 722 S.W.2d 694, 697 (Tex.1986). In making credibility determinations, the fact-finder "cannot ignore undisputed testimony that is clear, positive, direct, otherwise credible, free from contradictions and inconsistencies, and could have been readily controverted." *City of Keller*, 168 S.W.3d at 820. The fact-finder thus is not "free to believe testimony that is conclusively negated by undisputed facts." *Id.* However, if the fact-finder could reasonably believe the testimony of one witness or disbelieve the testimony of another witness, the appellate court "cannot impose [its] own opinions to the contrary." *Id.* at 819.

An appellant may not challenge a trial court's conclusions of law for factual sufficiency, but we may review the legal conclusions drawn from the facts to determine their correctness. *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex.2002). In an appeal from a bench trial, we review a trial court's conclusions of law as legal questions, de novo, and will uphold them on appeal if the judgment can be sustained on any legal theory supported by the evidence. *Id.; In re Moers*, 104 S.W.3d 609, 611 (Tex.App.-Houston [1st Dist.] 2003, no pet.). If we determine that a conclusion of law is erroneous, but that

the trial court nevertheless rendered the proper judgment, the error does not require reversal. *Id.*

The test for legal sufficiency is "whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review." *City of Keller,* 168 S.W.3d at 827. In making this determination, we credit favorable evidence if a reasonable fact-finder could, and disregard contrary evidence unless a reasonable fact-finder could not. *Id.* If the evidence falls within the zone of reasonable disagreement, then we may not substitute our judgment for that of the fact-finder. *Id.* at 822. The fact-finder is the sole judge of the credibility of the witnesses and the weight to give their testimony. *Id.* at 819. In reviewing a factual sufficiency challenge, we consider and weigh all of the evidence supporting and contradicting the challenged finding and set aside the finding only if the evidence is so weak as to make the finding clearly wrong and manifestly unjust. *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986); *see Plas–Tex, Inc. v. U.S. Steel Corp.,* 772 S.W.2d 442, 445 (Tex. 1989).

### B. Retaliatory discharge

 Section 451.001 of the Labor Code provides that an employer may not discharge or in any other manner discriminate against an employee because the employee has filed a workers' compensation claim in good faith. TEX. LAB.CODE ANN. § 451.001(1) (West 2006). The employee bears the burden to show a causal link between the discharge or discrimination and the filing of a workers' compensation claim. *See Russo v. Smith Int'l, Inc.,* 93 S.W.3d 428 (Tex.App.-Houston [14th Dist.] 2002, pet. denied); *see* TEX. LAB.CODE ANN. § 451.002(c). A causal connection is established between a plaintiff's protected action and a defendant's retaliation if, but for the employee's action, the adverse employment action would not have occurred when it did. *Cont'l Coffee Prods. Co. v. Cazarez,* 937 S.W.2d 444, 450–51 (Tex.1996). The employee need not prove that participation in the protected activity was the sole cause for the adverse employment action. *Id.* at 451 n. 3. The causal connection may be established by circumstantial evidence or by the reasonable inferences drawn from the evidence. *Id.* at 451. Circumstantial evidence sufficient to establish a causal link between termination and filing a workers' compensation claim includes: (1) knowledge of the compensation claim by those making the decision on termination; (2) expression of a negative attitude toward the employee's injured condition; (3) failure to adhere to established company policies; (4) discriminatory treatment in comparison to similarly situated employees; and (5) evidence that the stated reason for the discharge was false. *Id.* Hertz challenges the sufficiency of all of these forms of circumstantial evidence but the first.

### 1. Negative attitude toward the employee's filing of the claim

Hertz first contends that Barousse did not offer legally or factually sufficient evidence of a negative attitude toward his condition. Specifically, Hertz claims that the statements Barousse relies on are merely "stray remarks" that were unrelated to the layoff decision and thus not evidence of retaliatory intent. *See M.D. Anderson Hosp. & Tumor Inst. v. Willrich,* 28 S.W.3d 22, 25 (Tex.2000) (holding that several occasions in which co-workers and one supervisor used racially derogatory term in jokes, all of which occurred five years or more before reduction in force in which employee was discharged, were too remote in time and not made by anyone directly connected with decision, and thus

not enough to raise fact question about whether reason for termination was pretextual).

■ According to Hertz, Newman's negative evaluations and disciplinary memoranda criticizing Barousse's job performance—prepared within days after Barousse filed his workers' compensation claim—do not support a finding that Hertz expressed a negative attitude toward Barousse's condition because Newman did not make the decision to discharge Barousse. To support this contention, Hertz relies solely on Newman's own testimony that he did not make the decision to terminate Barousse's employment or eliminate his position. The trial court was not required to credit Newman's self-serving denial, particularly in light of Newman's equivocal testimony about the nature of his involvement in meetings concerning the layoff. *See City of Keller*, 168 S.W.3d at 819.

■ Hertz also discounts the effect of Newman's own animus in the ultimate decision to terminate Barousse's position. But Hertz did not conclusively prove that Barousse's position was eliminated due to restructuring and that the performance evaluations had nothing to do with the layoff decision. First, despite the warnings that Barousse's work performance was poor enough to subject him to termination if not improved, Hertz insisted that Barousse's termination had nothing to do with his performance. The record also shows that Hertz did not tell two other discharged employees its real reasons for terminating their employment. The trial court had reason to discredit Hertz's proffered reason for discharging Barousse and could reasonably infer that an intended consequence of Newman's negative evaluation of and disciplinary action against Barousse was the termination of his employment with Hertz. *See Staub v. Proctor Hosp.*, 562 U.S. ——, 131 S.Ct. 1186, 1194, 179 L.Ed.2d 144 (2011) (holding "that if a supervisor performs an act motivated by antimilitary animus that is intended by the supervisor to cause an adverse employment action, and if that act is a proximate cause of the ultimate employment action, then the employer is liable under USERRA [the Uniformed Services Employment and Reemployment Rights Act]"). The record shows that Alewel, who had commented with apparent displeasure when he learned about Barousse's worker's compensation claim, was aware of the claim when he made the layoff decision.

### 2. Adherence to established company policies

■ In contending that the evidence does not support a conclusion that Hertz deviated from its established policies, Hertz identifies only the lack of evidence that it deviated from its policies concerning the timing or implementation of layoff decisions. Hertz does not, however, address its deviation from policy in connection with its treatment of Barousse immediately after he filed his workers' compensation claim and in handling Barousse's discharge. Newman, who had supervised Barousse for only three months, evaluated Barousse's performance on an appraisal form meant to cover a year, and refused Barousse's request to add a written comment even though the form contains space for employee comments and signature. Also, precisely because Barousse was on workers' compensation leave, the decisionmakers sought guidance from human resources concerning the timing of Barousse's termination, both when they made the layoff decision in early 2007 and again immediately before Barousse was released to return to work. This evidence supports a reasonable inference that their approach in handling Barousse's employment following

the filing of his workers' compensation claim deviated from established company policy. The performance review and warnings and the layoff decision were made within a few months of the date Barousse filed his claim. The fact that Hertz delayed implementation of that decision until Barousse was released to return to work does not erase the significance of the decision's timing, especially given that Hertz points to the workers' compensation claim as the reason for its delay.

### 3. Treatment in comparison to similarly situated employees

 Hertz also contends that the trial court could not rely on evidence that Hertz retained or found other positions for other region sales directors in the central region as proof that Hertz treated Barousse differently from other similarly situated employees. "Employees are similarly situated if their circumstances are comparable in all material respects, including similar standards, supervisors, and conduct." *Ysleta Indep. Sch. Dist. v. Monarrez*, 177 S.W.3d 915, 917 (Tex.2005). Hertz initially points out that none of the other region sales directors were located in Houston, where the region sales manager also worked. This difference alone is not enough to render their jobs dissimilar, where they all had the same job duties and reported to the same manager. *See id.* at 917 & n. 3 (observing that employee's conduct need not be identical to that of another to show that they are similarly situated). The record contains testimony that the jobs had comparable responsibilities as well as evidence of a bonus plan identifying uniform goals for region sales directors. The other region sales director whose position was eliminated at the same time as Barousse's was not terminated, but received an offer for an alternate position

in the company, which he accepted. The only material difference shown between Barousse and this other employee is the fact that Barousse had filed a workers' compensation claim.

### 4. Evidence that the stated reason for discharge was false

 Hertz next claims that Barousse failed to present any evidence that called into question the veracity of its proffered reason for termination—that restructuring would improve efficiencies because Newman could perform Barousse's former duties as well as his own as region sales manager. But Hertz's evidence does not conclusively prove that Barousse was discharged because of restructuring and not because he filed a workers' compensation claim. The timing of the termination decision is a fact that the trial court, as fact finder, was free to consider in arriving at its findings. *Rogers v. City of Fort Worth*, 89 S.W.3d 265, 279 (Tex.App.-Fort Worth 2002, no pet.).

 Further, Barousse was not required to present evidence to directly contradict Hertz's proffered reason for the elimination of his job. To satisfy the burden of proof, Barousse need not have shown that restructuring had *nothing* to do with Hertz's decision. *See Tex. Dep't of Human Servs. v. Hinds*, 904 S.W.2d 629, 634 (Tex.1995) (holding that, under Whistleblower Act, employee was not required to show that illegal motive was sole reason for termination). Here, immediately after Barousse filed his claim, Hertz prepared paperwork criticizing Barousse's performance and, for the first time in his lengthy tenure, warning him that he was subject to termination if his performance did not approve. Within three months, with Barousse still on medical leave, Hertz identified him for layoff, then, citing the fact

that he was out on workers' compensation, decided that it would not implement its decision until he returned. And, unlike other region sales directors, Barousse's employment was terminated without the option of transferring to another position within the company.

The evidence suffices to support the trial court's conclusion that a reduction in force was not the principal reason for Barousse's termination and that, but for his filing of the workers' compensation claim, Hertz would not have terminated his employment when it did. *See id.* at 636.

### C. Compensatory damages award

■ In Hertz's challenges to the sufficiency of the evidence supporting the damages awards, we are mindful that the factfinder has the discretion to award damages within the range of evidence presented at trial, so long as a rational basis exists for its calculation. *See ExxonMobil Corp. v. Valence Operating Co.,* 174 S.W.3d 303, 316 (Tex.App.-Houston [1st Dist.] 2005, pet. denied). We note that the trial court did not segregate past lost wages and benefits from future lost wages and benefits in its findings of fact and conclusions of law, but the judgment awards prejudgment interest on $54,477.25 in "past damages" of the $665,000.00 total compensatory damages award. The trial court's findings of fact state that Barousse's lost earnings were "at least $590,000," and his lost benefits were "at least $120,000," totaling at least $710,000. In its conclusions of law, however, the trial court set a lower amount, determining that Barousse "lost earnings and employee benefits as a result of the retaliatory discharge in the amount of $665,000.00," the same figure used in the judgment for the award of compensatory damages.

### 1. Mental anguish

■ With respect to mental anguish, the trial court made a finding that Hertz's termination of Barousse's employment "caused painful emotions, wounded pride, shame, despair and public humiliation to such an extent that it has disrupted Mr. Barousse's daily routine." Yet, the trial court made no finding of fact or conclusion of law identifying the amount necessary to compensate Barousse for the mental anguish he suffered.

To the extent that the judgment can be read to contain findings of fact inconsistent with those set forth in the findings of fact and conclusions of law filed after the judgment, "the latter findings will control for appellate purposes." TEX.R. CIV. P. 299a. Accordingly, in the absence of a damages award addressing it, the mental anguish finding is immaterial, and we construe the judgment as awarding damages only for the $665,000.00 in earnings and employee benefits that Barousse lost as a result of the retaliatory discharge.

### 2. Lost wages and benefits

■ Pointing to the elimination of all the region sales director positions by 2009, as well as evidence of other cost-cutting measures, Hertz claims that the evidence does not support the trial court's finding that, absent Barousse's discharge, he would have continued to receive the same pay and benefits from Hertz for the next twenty years. Lost wages and benefits refer to the actual loss of income caused by the wrongful act from the time of injury to the time of trial. *See Strauss v. Cont'l Airlines, Inc.,* 67 S.W.3d 428, 435 (Tex.App.-Houston [14th Dist.] 2002, no pet.). The correct measure of damages for lost wages is the amount of money the employee would have earned had he not been terminated, less the sum he will earn after termination. *See Goodman v. Page,*

984 S.W.2d 299, 305 (Tex.App.-Fort Worth 1998, pet. denied). In determining future lost wages, a plaintiff is not required to prove an exact amount, only facts from which the fact-finder can determine the proper amount. *Metal Indus. of Cal., Inc. v. Farley*, 33 S.W.3d 83, 88 (Tex.App.-Texarkana 2000, no pet.) (citing *Goodman*, 984 S.W.2d at 305).

■ Hertz does not account for the fact that the other region sales directors in his region were not laid off but received offers of other positions within the company when their jobs were eliminated. The fact that all accepted the offers supports an inference that the compensation for the alternate positions remained more or less the same as the amount they earned as region sales directors. *Compare Farley*, at 33 S.W.3d at 89 (holding that plaintiff's testimony that she planned to continue at plant, together with testimony that almost all of company's employees maintained employment after premises were leased to another manufacturer, supported damages award) *with Canutillo Indep. Sch. Dist. v. Olivares*, 917 S.W.2d 494, 500 (Tex.App.-El Paso 1996, no writ) (holding that evidence of plaintiff's last wage rate with defendant and plaintiff's assertion that he intended to work until age 65 could not support jury award of $100,000 in future lost wages where plaintiff's theory negated possibility of future wages by assuming that he would be unable to work in future). Barousse was a longtime nineteen-year employee of Hertz, a well-established company with an international presence. According to Barousse's testimony, before he made his workers' compensation claim, he was a loyal employee with no thoughts of leaving the company. Barousse presented evidence of the wages and benefits he earned at Hertz in 2006, his wages and benefits at Sunstates in 2008 and 2009, and the applicable federal full retirement age of 67.

Based on this evidence, the trial court could reasonably infer that Barousse would have remained at Hertz for his entire working life.

■ Hertz also complains that the evidence does not support an award for lost wages and benefits for approximately a year following his discharge because the undisputed evidence shows that Barousse was on medical leave and physically incapable of performing any work during that time. The trial court, however, did not award the maximum amount permitted under its findings or the evidence. In awarding prejudgment interest, the judgment finds $54,477.25 in past damages, but the period between the date Barousse's claim accrued and the date of the judgment is more than nineteen months longer than the time Barousse was on medical leave. The amount of the award is within the range of the evidence of and comports with the trial court's findings concerning Barousse's wages and benefits in his last year at Hertz and the reduced wages and benefits he earned with Sunstates for those nineteen months. We therefore hold that legally and factually sufficient evidence supports the past damages award.

### 3. Mitigation

■ Hertz contends that the trial court implicitly rejected Hertz's failure-to-mitigate defense, and its decision to do so is against the great weight and preponderance of the evidence. According to Hertz, Barousse should not recover any economic damages because he abandoned his job search for comparable employment after accepting Sunstates' offer of employment in a nonsupervisory position.

■ A discharged employee must use reasonable diligence to mitigate damages by seeking other employment. *See Gulf Consol. Int'l, Inc. v. Murphy*, 658 S.W.2d 565, 565–66 (Tex.1983); *Gorges*

*Foodserv., Inc. v. Huerta*, 964 S.W.2d 656, 669 (Tex.App.-Corpus Christi 1997, no pet.); *Am. West Airlines, Inc. v. Tope*, 935 S.W.2d 908, 915 (Tex.App.-El Paso 1996, writ dism'd as moot). Mitigation of damages is ordinarily a question of fact. *See Hygeia Dairy Co. v. Gonzalez*, 994 S.W.2d 220, 224 (Tex.App.-San Antonio 1999, no pet.). As the proponent of the failure-to-mitigate defense, Hertz bore the burden to prove that Barousse's efforts to obtain comparable employment were wanting. *See Tope*, 935 S.W.2d at 915.

The evidence shows that Barousse began working for Sunstates within a week after he received his medical release to return to work. Although not supervisory, the position Barousse accepted was a sales position in the same field of his experience. His income with Sunstates is less than he earned at Hertz, but it does not present the kind of stark contrast with his former earnings that would require a finding that he failed to mitigate his damages. *Compare Alamo Cmty. Coll. Dist. v. Miller*, 274 S.W.3d 779, 791 (Tex.App.-San Antonio 2008, no pet.) (upholding trial court's denial of lost wages based on failure to mitigate where discharged employee admitted that he made no attempt to secure another full-time teaching position at public or private secondary school or institution of higher education; his only jobs were construction work and part-time teaching work) *and Texas Animal Health Comm'n v. Garza*, 27 S.W.3d 54, 61–63 (Tex.App.-San Antonio 2000, pet. denied) (reversing JNOV and reinstating jury finding that plaintiff failed to mitigate where evidence showed that plaintiff, who had been state brucellosis inspector, held only one unpaid job on parents' ranch in seven years between the date of termination and date of trial and vaguely answered that he had looked "several places" for job) *with Tope*, 935 S.W.2d at 915 (holding that plaintiff's rejection of former employer's uncondi-

tional offer of employment as baggage service agent was not conclusive proof that plaintiff failed to mitigate where evidence showed that plaintiff previously accepted pay cut to avoid customer contact, and baggage service was physically and mentally demanding; mitigation shown by evidence that plaintiff attended year of school following discharge, ran his own business, and applied for airline job as soon as he received full release). Hertz did not present any evidence of other positions in the job market that have been available since October 2008 for which Barousse qualified and would have received a higher salary. Legally and factually sufficient evidence supports an implicit finding that Barousse made reasonable efforts to seek and maintain substantially similar employment by promptly returning to work after his medical release, and by continuing his employment with Sunstates.

### D. Punitive damages award

 Hertz next challenges the legal and factual sufficiency of the evidence of the trial court's finding of malice underlying its $100,000 punitive damages award. In order to recover exemplary damages under section 451.002 of the Labor Code, a plaintiff must prove, by clear and convincing evidence, that her employer acted willfully and with malice. *See Sw. Bell Tel. Co. v. Garza*, 164 S.W.3d 607, 627 (Tex. 2004); *Cont'l Coffee Prods. Co. v. Cazarez*, 937 S.W.2d 444, 452 (Tex.1996).

 We follow a more stringent standard to review the legal and factual sufficiency of the evidence when the factfinder applies the clear and convincing standard of proof. *See Sw. Bell Tel. Co.*, 164 S.W.3d at 627. "[I]n reviewing the legal sufficiency of evidence to support a finding that must be proved by clear and convincing evidence, an appellate court must look at all the evidence in the light

most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true.'" *Romero v. KPH Consol., Inc.*, 166 S.W.3d 212, 220 (Tex.2005) (citing *Sw. Bell Tel. Co.*, 164 S.W.3d at 627).

■■■■■ For purposes of Chapter 451 of the Labor Code, "[a]ctual malice is characterized by ill-will, spite, evil motive, or purposing the injuring of another." *Cont'l Coffee*, 937 S.W.2d at 452; *see Sw. Bell Tel. Co.*, 164 S.W.3d at 628; *see also Glass v. Amber, Inc.*, No. 01–00–00589–CV, 2002 WL 31430097, at *8 (Tex.App.-Houston [1st Dist.] Oct. 31, 2002, pet. denied) (mem. op., not designated for publication) (observing that "[f]iring an employee for filing a workers' compensation claim in good faith is always an unseemly act[,]" but actual malice requires showing that employer had conscious desire to harm employee). An employer's violation of section 451.001, standing alone, does not support an award of exemplary or punitive damages. *See Sw. Bell Tel. Co.*, 164 S.W.3d at 627, 629. Only the most egregious violations of the statute will be subject to punitive awards. *See id.*

Viewed in a light most favorable to the trial court's finding, the evidence shows that, after Barousse filed his workers' compensation claim, his Hertz supervisors and managers expressed displeasure about his claim, prepared highly critical evaluations of his job performance and performance-related warnings threatening termination during his medical leave, concealed their decision to discharge from him for several months, and prodded him to obtain a release to return to work, only to discharge him when he did. This evidence supports the finding that Barousse was terminated in unlawful retaliation for filing a workers' compensation claim. It does not, however, establish a firm belief or conviction that Hertz acted with malice toward Barousse beyond the level necessary to prove liability under section 451.001 in the first instance. *Compare Cont'l Coffee*, 937 S.W.2d at 452 (concluding that evidence which tended to establish violation of anti-retaliation statute, including evidence of employer's doubts of employee's injury, was not type of egregious violation for which punitive damages were appropriate) *and Wal–Mart Stores, Inc. v. Holland*, 956 S.W.2d 590, 596 (Tex.App.-Tyler 1997, pet. granted) (holding that substantially more evidence than evidence regarding manager's knowledge and anger over employee's injury, threats of termination, and employer's policy of discouraging workers' compensation claims is required for finding of malice), *rev'd on other grounds*, 1 S.W.3d 91 (Tex.1999) (per curiam) *with Whole Foods Mkt. Sw. L.P. v. Tijerina*, 979 S.W.2d 768, 780 (Tex.App.-Houston [14th Dist.] 1998, pet. denied) (holding that evidence that employer badgered employee, including not letting her leave room until she signed false confession to misconduct and then refusing to listen to her explanation for confession, along with evidence that testimony that money was factor in employer's decision to terminate employee, was sufficient to establish malice) *and Lubbock Cty. v. Strube*, 953 S.W.2d 847, 858–60 (Tex.App.-Austin 1997, pet. denied) (evidence that supervisors ignored employee's injuries, gave her work assignments which subjected her to harassment, and threatened to fire her were sufficient to support finding of malice). We therefore hold that the trial court erred in awarding punitive damages.

## II. Exclusion of personal injury settlement evidence

■■■■ Hertz brings a single evidentiary complaint that the trial court abused its discretion in excluding evidence of the

amount that Barousse received in the settlement of his personal injury suit against the third party that caused the September 2007 car accident. Specifically, Hertz contends that the exclusion of that evidence violated the one-satisfaction rule and probably led to a double recovery for Barousse.

 The one-satisfaction rule applies when more than multiple defendants commit the same act, or when multiple defendants commit "technically different acts" that result in the same, single injury. *AMX Enters., Inc. v. Bank One, N.A.*, 196 S.W.3d 202, 206 (Tex.App.-Houston [1st Dist] 2006, pet. denied) (citing *Crown Life Ins. Co. v. Casteel*, 22 S.W.3d 378, 390 (Tex.2000)). Under the rule, a plaintiff who has suffered only one injury, even if based on overlapping and varied theories of liability, may only recover once, particularly if the evidence supporting each cause of action is the same. *Buccaneer Homes of Ala., Inc. v. Pelis*, 43 S.W.3d 586, 590 (Tex.App.-Houston [1st Dist.] 2001, no pet.).

The record does not support Hertz's contention that the one-satisfaction rule applies here. Each suit sought damages for a different injury. Barousse's personal injury suit against the third-party driver arose out of the injuries he received as a result of the September 2006 accident. His workers' compensation retaliation suit, in contrast, arose out of the adverse employment action Hertz took after Barousse filed his worker's compensation claim, specifically, the termination of his employment in September 2007.

Hertz failed to tender any evidence showing that Barousse received any funds in the settlement of his suit against the driver that would overlap with any damages he sought in his suit against Hertz. Based on this record, we hold that the trial court did not abuse its discretion in excluding evidence of funds that Barousse received in the settlement of his personal injury suit against the driver who caused the 2006 accident.

### Conclusion

We hold that legally and factually sufficient evidence supports the trial court's finding that Hertz violated the Texas workers' compensation anti-retaliation statute in terminating Barousse's employment. The evidence is also legally and factually sufficient to support the award of compensatory damages, but it does not support the punitive damages award. We further hold that the trial court did not abuse its discretion in excluding evidence of Barousse's personal injury settlement. We therefore vacate the award of punitive damages. We affirm the judgment in all other respects.